OPINION OF THE COURT
Kaye, J.
Defendant and John Kennedy were adjoining landowners in the Town of Johnstown, Fulton County. The portion of defendant’s land closest to the property line was occupied by a garage housing Fulton County Motors, an automotive repair business owned by defendant’s son. The structure was separated from the Kennedy residence by a large open lot owned by Kennedy.
On the evening of April 13, 1988, Kennedy, a member of the Sammonsville Fire Department, had decided to clear the lot, and obtained a permit authorizing him to burn debris. In preparation for the burn, Kennedy raked grass away from the property line and gathered the debris into two large piles. Several members of the Sammonsville Fire Department were present with equipment, including fire trucks. After water was sprayed along the property line to keep the fire from crossing onto defendant’s property, Kennedy lit the debris. As he testified, there was only a very slight breeze, blowing away from defendant’s property.
Defendant’s son and another defense witness were in the garage when they saw smoke. Although defendant was not present, his son — fearing that the fire was heading toward the garage, which contained inflammable materials — sought him out.
At approximately 8:14 p.m., defendant called the Fulton County Sheriff’s Department, reported that there was a brush fire next to Fulton County Motors, and demanded that the fire department be dispatched. The Deputy Sheriff who received defendant’s call had previously been told by the fire department that they were at a controlled burn at the Kennedy *549 residence, but nonetheless called the fire truck and learned that the fire was under control. While the Deputy was calling the fire truck, defendant telephoned a second time to demand that the fire department be immediately dispatched. Although he received assurance that the fire department was on the scene and that it was a controlled burn, defendant proceeded to the Sammonsville Fire Department and pulled the alarm, sounding a siren.
Defendant was charged with second degree falsely reporting an incident (Penal Law § 240.55 [1]). A person is guilty of that offense "when, knowing the information reported, conveyed or circulated to be false or baseless, he or she * * * [initiates or circulates a false report or warning of an alleged occurrence or impending occurrence of a fire or an explosion under circumstances in which it is not unlikely that public alarm or inconvenience will result”. Following trial in Town Court, defendant was found guilty as charged, and County Court affirmed.
 Defendant challenges his conviction, urging dismissal of the information on the ground that his conduct was not within the ambit of the statute, or for insufficiency of the evidence; alternatively, he seeks a new trial on the ground that the trial court improperly delegated a judicial function to counsel. We conclude that the information should be sustained, but order a new trial on account of the trial court’s improper delegation.
The common element in defendant’s arguments for dismissal is that setting off the fire alarm cannot be considered "falsely reporting an incident” because there was in fact a real fire, notwithstanding evidence — which must be viewed in the light most favorable to the People — that firefighters had control of the situation, the fire posed no threat, and defendant was repeatedly so advised. Under these circumstances, we cannot agree that defendant’s acts could not constitute falsely reporting an incident.
As defendant would read the statute, the existence of a fire —even a fire that threatens no harm whatsoever — would immunize a person from liability under section 240.55. Taken to its extreme, his approach would lead to absurd results, as County Court recognized: "a person who struck a match, placed it on a nonflammable surface and then pulled a fire alarm would clearly be guilty of falsely reporting a fire, despite the actual existence of a fire.” (147 Misc 2d 288, 290.)
*550 To make mere existence of a fire determinative of liability under section 240.55 (1) is inconsistent with the statute itself. It is a distinct offense under a separate subdivision of the statute to report a fire or explosion "which did not in fact occur or does not in fact exist” (Penal Law § 240.55 [2]), and in light of that language the existence of a fire süch as the one here might preclude a prosecution under that subdivision. Defendant, however, was prosecuted under section 240.55 (1), with no such clause.
The falsity of defendant’s report lay not in the fact that there was no fire, but rather in the necessary implication of his act that the fire was such as to demand the fire department’s immediate attention. Here, there was certainly evidence from which the jury could have found that implication false, and concluded that defendant — knowing that the emergency he reported was without basis — had initiated a false report or warning.
Defendant disputes that his actions were taken "under circumstances in which it is not unlikely that public alarm or inconvenience will result” (Penal Law § 240.55 [1]) because the alarm was directed at the fire department rather than the general public. That contention is meritless. By communicating the report of the fire in a manner that required the fire department to respond, defendant made it "not unlikely” that public alarm or inconvenience would result. Defendant’s act caused the fire siren to sound, alerting not only firefighters but also residents within earshot of the existence of a nearby fire. It is not unlikely that requiring unnecessary response to an alarm may inconvenience and indeed endanger the public, by placing rapidly moving emergency vehicles on public roads and keeping firefighters from attending a genuine emergency elsewhere. Moreover, since the harm aimed at by the statute is merely the likelihood that these results will occur, it was unnecessary to prove that they in fact did occur.
Defendant’s argument that affirmance here would inhibit the public from reporting fires is not borne out by the facts before us. Defendant was not convicted because, before sounding an alarm, he failed to investigate whether the fire was out of control. He was convicted because, knowing that the fire department had the situation in hand, he continued to demand emergency action he had been assured by the authorities was unnecessary.
While concluding that defendant’s conduct was within the *551 ambit of Penal Law § 240.55 (1) and the evidence was sufficient to sustain the conviction, we agree with defendant that the trial court committed reversible error in allowing counsel to answer questions posed by the jury concerning the court’s instructions.
The jurors retired to deliberate at 10:45 p.m. At approximately 1:00 a.m. they returned to the courtroom with questions concerning the instructions on the defense of justification and the distinction between second and third degree falsely reporting an incident. The Trial Judge, apparently not an attorney, several times attempted to respond. However, after jurors continued to express their lack of comprehension, the court allowed the attorneys themselves to explain the instruction. Defense counsel read each instruction to the jury, gave his interpretation, and the prosecutor then added his own views.
The court’s informal handling constituted a surrender of its nondelegable judicial responsibility to supervise jury deliberation, which in effect deprived defendant of his fundamental right to trial by jury and thereby denied him a fair trial. (See, People v Charles F., 60 NY2d 474, 477.)
As we have previously held, a Trial Judge’s delegation to a law secretary of the task of supervising a deliberating jury, including rereading instructions and responding to jury notes, deprives a defendant of the right to trial by jury because an integral part of that right is the supervision of a Judge (People v Ahmed, 66 NY2d 307, 310). Moreover, we concluded that the Judge’s failure to retain control of the jury deliberations, because of its impact on the constitutional guarantee of trial by jury, implicated the organization of the court or mode of proceedings prescribed by law, and therefore presented a question of law even absent timely objection. Nor did defense counsel’s participation constitute a waiver. (Id., at 310-311.)
The principles set forth in Ahmed are applicable here. As in that case, the trial court allowed others to assume the important function of maintaining control of jury deliberations. What even the People concede was the "better practice” — and we determine was the required practice — would have been for the court and counsel to discuss the matter outside the jury’s presence, and then return to open court for the Judge, not the lawyers, to deliver the supplemental instructions.
*552 Accordingly, the order of County Court should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.