Victor **MONROE,** Petitioner–Appellant,

v.

Robert H. **KUHLMAN,** Superintendent, Sullivan Correctional Facility, Respondent–Appellee.

**Docket No. 03–3703.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 6, 2005.

Decided: Jan. 3, 2006.

Robin C. Smith, Brooklyn, NY, for Petitioner–Appellant.

Leonard Joblove, Assistant District Attorney (Charles J. Hynes, District Attorney, Kings County, on the brief; Thomas M. Ross, Assistant District Attorney, of counsel), Brooklyn, NY, for Respondent–Appellee.

Before: WALKER, Chief Judge, FEINBERG and STRAUB, Circuit Judges.

STRAUB, Circuit Judge.

This is an appeal from an October 28, 2003, judgment of the United States District Court for the Eastern District of New York (Jack B. Weinstein, *Judge*) denying the habeas petition of Petitioner–Appellant

Victor Monroe ("Monroe"). In the petition for review of his state criminal conviction, Monroe claimed that his right to be present during his jury trial and his right to judicial supervision of his trial were violated when the trial judge allowed the jury to view evidence outside the presence of the judge and the parties while the trial was adjourned. For the reasons stated below, we agree with the District Court that the New York Court of Appeals' rejection of Monroe's right-to-be-present claim was not an unreasonable application of Supreme Court precedent. We vacate the District Court's decision as to Monroe's judicial supervision claim, however, as we hold that the Court of Appeals' application of the contemporaneous objection rule to the instant circumstances—absence of the trial judge during the jury's viewing of evidence—is inadequate to preclude federal habeas review of this claim. We remand the case to the District Court to consider the merits of Monroe's judicial supervision claim.

## FACTS AND PROCEDURAL BACKGROUND

In 1994, Monroe was convicted in New York state court of second-degree murder. Trial Tr. Apr. 19, 1994 at 1028–29. On several occasions during the three-week trial that led to his conviction, the state trial court received certain exhibits in evidence but did not contemporaneously pass such exhibits to the jury for review. Rather, the trial court allowed the jury to review the exhibits on breaks in the jury room, outside the presence of the court and the parties. Trial Tr. Apr. 6, 1994 at 95–96; Apr. 7, 1994 at 347, 400, 458, 579. Before several of the viewings, the trial court warned the jury not to discuss the

evidence or the case during the viewings. *See id.* Among the exhibits were police sketches of the crime scene, ballistics evidence, medical records of one of the victims, and photographs, including photographs of the crime scene, photographs of a lineup that included Monroe, and, apparently, a photograph of Monroe's brother.[1] *See id.* This practice of the trial court occurred several times without objection from defense counsel. Trial Tr. Apr. 6, 1994 at 95–96; Apr. 7, 1994 at 347, 400, 458, 579. Prior to the viewing that was scheduled to occur on April 15, 1994, *see* Trial Tr. Apr. 13, 1994 at 756, defense counsel objected on the ground that Monroe would be absent from court, Trial Tr. Apr. 14, 1994 at 3. The trial court, surprised at the new objection, stated: "You understand that all the exhibits have been shown to the jurors in the jury room without them coming into the courtroom. So they don't know that your client is not here." Defense counsel responded: "I don't know that and I object to that happening." *Id.* The court sustained the objection and did not allow the jury to view any exhibits outside the courtroom for the remainder of the trial. *Id.* at 3–4.

On direct appeal, Monroe claimed, *inter alia,* that the jury's examination of trial exhibits without judicial supervision and outside his presence constituted reversible error. The Appellate Division affirmed his conviction, finding that Monroe "did not initially object to, and in effect, acquiesced in the procedure followed by the court." *People v. Monroe,* 234 A.D.2d 320, 651 N.Y.S.2d 536 (2d Dept. 1996). The court further reached the merits of the claim finding that Monroe's "belated claim that he was prejudiced" by the trial court's actions was "purely speculative," and that

---

1. There is some confusion over whether this exhibit was viewed by the jurors in the jury room. Trial Tr. Apr. 11, 1994, at 579.

"[t]here is no indication in the record that [Monroe's] ability to defend against the charges was in any way affected by the court's action." *Id.* at 320, 651 N.Y.S.2d 536,.

The New York Court of Appeals granted leave to appeal. *People v. Monroe,* 90 N.Y.2d 982, 688 N.E.2d 491, 665 N.Y.S.2d 617 (N.Y.1997). Over a dissent, the court concluded that the trial judge's absence from the jury's viewings did not affect "the organization of the court or the mode of proceedings proscribed [sic] by law" and therefore could not be reviewed on appeal absent a timely objection in the trial court. *Id.* at 983–84, 665 N.Y.S.2d at 618, 688 N.E.2d at 492,. The court noted that the jury examined the exhibits only after they had been received in evidence and that the trial judge had warned the jury not to discuss the evidence or the case, "which was sufficient to dispel the possibility of premature deliberation during the viewings." *Id.* The court found further that "the viewings did not require any rulings or instructions and did not implicate any of the Judge's substantive roles in conducting the trial." *Id.* In light of the foregoing, the court held that "[t]he alleged error therefore does not fall within that narrowly drawn class of fundamental defects immune from the preservation requirement." *Id.* The Court of Appeals also rejected Monroe's claim that he was denied his right to be present at the viewings, concluding that the viewings were "an ancillary proceeding" insofar as the exhibits had already been received in evidence and that Monroe's "potential contribution to the viewings was minimal" and his absence did not compromise his ability to advance his position or counter the state's theory. *Id.*

The dissenting judge, Judge Titone, believed that the trial court's allowing the jury to view exhibits outside the presence of the court and parties "was an unwarranted departure from acceptable trial practice that, in both form and substance, deprived defendant of his constitutional and statutory right to be present at all material stages of trial." *Id.* at 984–85, 655 N.Y.S.2d at 618, 688 N.E.2d at 492, (Titone, J., dissenting). Judge Titone found further that such right "must be enforced by the appellate courts even in the absence of a timely and specific objection or a showing of actual prejudice." *Id.* at 985, 665 N.Y.S.2d at 618–19, 688 N.E.2d at 492–93,. He reasoned:

It is beyond dispute that the reception of evidence is a material stage of trial at which the defendant's presence is required. It is clearly a "core" stage of the criminal proceeding as to which the right to be present "serves a symbolic function" as well as affording the defendant an opportunity for meaningful participation.

The majority does not take issue with this principle, but instead attempts to circumvent it by relying on the fact that "the jury examined the exhibits only after they had been received in evidence." This analytical disposition, however, represents an overly formalistic—and entirely unrealistic—view of trial practice.

The formal reception of evidentiary exhibits occurs when they are tendered by counsel and determined to be legally admissible by the court. At that point, the exhibits are technically available for review and inspection by the jury. However, depending on their size and nature, the exhibits may not actually be examined by the jurors at that time. Instead, they may be passed around for close viewing immediately after the formalities of admission are completed or the viewing may be postponed for some later, more convenient time in the trial.

In this case, for example, the record makes clear that on at least two occasions, the exhibits were admitted but were not actually seen by the jurors until the unsupervised viewings that are the subject of this appeal.

Given that the critical event for purposes of the fact-finding process is the jury's actual exposure to the exhibits rather than the time when they are technically deemed "admitted" by the court, it follows that the defendant's due process and statutory right to be present attaches at the former, as well as the latter, time. Indeed, it seems illogical and unreasonable to suggest that the defendant must be present during the formal tender and acceptance of exhibits for admission, but that his presence may be dispensed with when those exhibits are actually shown to the jury. Certainly, the jurors' examination of the exhibits presents an occasion for meaningful participation by the accused, since their reactions are observable events that may well affect the defense's trial strategy. For example, a defendant may notice a particular juror lingering for an unusually long time over a particular exhibit and, as a consequence, may suggest to his trial counsel that further exploration of the exhibit's significance is required.

*Id.* at 985–96, 665 N.Y.S.2d at 619, 688 N.E.2d at 493, (internal citations and quotation marks omitted).

In February 2001, Monroe, *pro se* and incarcerated, filed a habeas petition, pursuant to 28 U.S.C. § 2254, in the United States District Court for the Eastern District of New York. In his petition, Monroe argued that (1) his right to judicial supervision of the jury was abridged; and (2) he was denied his right to be present at all material stages of the proceeding. The District Court denied the petition. *Mon-*

*roe v. Kuhlman,* Nos. 01–CV–0654(JBW), 03–MISC–0066(JBW), 2003 WL 22952845 (E.D.N.Y. Oct.28, 2003). According to the District Court, the New York Court of Appeals' decision that Monroe's judicial supervision claim was not preserved was an adequate procedural ground, and therefore judicial review of this claim on habeas was barred. *Id.* at *4–5. As to Monroe's right to be present claim, the District Court found that although the Court of Appeals' decision was not "beyond critique" and was "cogently argued" to be "formalistic" by Judge Titone, it was not an unreasonable application of Supreme Court precedent. *Id.* at *5–6. The District Court therefore denied the habeas petition. The District Court, however, granted a certificate of appealability ("COA") as to Monroe's right to be present claim but denied it as to Monroe's remaining claims. Monroe filed a timely appeal, and on December 15, 2004, we expanded the COA to include the judicial supervision claim.

## DISCUSSION

This Court reviews the District Court's denial of Monroe's petition for a writ of habeas corpus *de novo* and its factual findings for clear error. *Nelson v. Walker,* 121 F.3d 828, 833 (2d Cir.1997).

### I. Judicial Supervision Claim

 On habeas review, we lack jurisdiction "to evaluate questions of federal law decided by a state court where the state court judgment 'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Green v. Travis,* 414 F.3d 288, 294 (2d Cir.2005) (quoting *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). We review *de novo* the issue of whether the procedural ground is "adequate" to support the judgment. *See Cotto v. Herbert,* 331 F.3d

217, 239 (2d Cir.2003) (" '[T]he question of when and how defaults in compliance with state procedural rules can preclude ... consideration of a federal question is itself a federal question.' " (quoting *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir.1999) (alteration in original))); *see also Lee v. Kemna*, 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002) ("[T]he adequacy of state procedural bars to the assertion of federal questions ... is not within the State's prerogative finally to decide; rather adequacy is itself a federal question." (alteration in original) (internal quotation marks omitted)).

■ A claimed procedural bar is adequate only if state courts have applied the rule "evenhandedly to all similar claims." *Cotto*, 331 F.3d at 239 (internal quotation marks omitted). In other words,

[a] procedural bar will be deemed adequate only if it is based on a rule that is firmly established and regularly followed by the state in question. When a federal court finds that the rule is inadequate under this test[,] the rule should not operate to bar federal review. Nonetheless, the principles of comity that drive the doctrine counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion lightly or without clear support in state law.

*Id.* (internal quotation marks omitted).

■ We examine whether application of the procedural rule is "firmly established and regularly followed" in consideration of the specific circumstances presented in a case. *See id.* at 240 ("[T]he adequacy of a state procedural bar is determined with reference to the 'particular application' of the rule." (quoting *Lee*, 534 U.S. at 387, 122 S.Ct. 877)). Though a rule in general terms might be considered "firmly established and regularly followed," such a rule considered in the specific circumstances of

a case might be inadequate to preclude federal habeas review. *See Lee*, 534 U.S. at 376, 122 S.Ct. 877 (noting that there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question"); *see also id.* at 387, 122 S.Ct. 877 (emphasizing the need to look at the "particular application" of the state procedural rule and rejecting dissent's theory that would focus simply on whether the rule "generally serves a legitimate state interest"); *Cotto*, 331 F.3d at 240–41.

In *Lee*, counsel for the petitioner had made an oral motion for continuance in the state trial court after learning that three defense witnesses had left the building and could not be located. 534 U.S. at 369, 122 S.Ct. 877. The trial court denied the motion, on the basis that the witnesses had "abandoned" Lee and because the trial court could not reschedule the trial for the following day. *Id.* at 370, 122 S.Ct. 877. Lee was convicted and appealed his case, in part on the basis that the motion for continuance was wrongfully denied. The state court of appeals and supreme court affirmed the conviction, holding that Lee's continuance motion was oral and therefore did not comply with a state rule that the motions be written and accompanied by an affidavit. *Id.* at 372, 122 S.Ct. 877. Lee's federal habeas petition was denied by the district court on procedural grounds, but the Supreme Court vacated and remanded, holding that the procedural bar was inadequate because (1) the state trial court denied the continuance motion on grounds that could not have been countered by a perfect motion for continuance, *id.* at 381, 122 S.Ct. 877, (2) state case law did not direct "flawless compliance" with the procedural rules requiring written motions, *id.* at 382, 122 S.Ct. 877, and (3) Lee "substantially complied" with the relevant proce-

dural rules when he orally made the motion and explained why a continuance was necessary, *id.* at 382, 122 S.Ct. 877.

Following *Lee*, we held in *Cotto*, that, in determining whether application of the procedural rule is firmly established and regularly followed, we must examine:

(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto*, 331 F.3d at 240 (quoting *Lee*, 534 U.S. at 382, 122 S.Ct. 877). "Although these three factors were not presented as a 'test' for determining adequacy, we use them as *guideposts* in 'evaluat[ing] the state interest in a procedural rule against the circumstances of a particular case.'" *Id.* (emphasis added and alteration in original) (quoting *Lee*, 534 U.S. at 386–87, 122 S.Ct. 877).

Here, as to the first consideration—whether the procedural ground was relied on by the trial court—we noted in *Cotto* that this factor is not very relevant in cases where we are reviewing application of the "contemporaneous objection" rule. That is, the lack of objection by a party "would not, almost by definition, be mentioned by the trial court." *Id.* at 242. In the instant case, however, the trial court ceased its practice of allowing jurors to examine evidence outside its presence after defense counsel made his objection known; therefore, it is likely that perfect compliance with the state rule would have

changed the trial court's decision. Accordingly, this factor weighs against Monroe. *Cf. Lee*, 534 U.S. at 381, 122 S.Ct. 877 (noting that perfect compliance would not have changed the outcome and thus, that this factor weighed in favor of the habeas petitioner).

As to the second consideration, state case law indicates that compliance with the contemporaneous objection rule is not demanded in the specific circumstances presented. Certainly, if a rule requiring compliance does exist, it is not *firmly* established. In *People v. Silver*, a state appellate decision dating back to 1934, the court held that a defendant could not waive a judicial supervision claim where the judge was absent during part of the prosecutor's summation. 240 A.D. 259, 269 N.Y.S. 765 (1st Dept. 1934). The court held that it was irrelevant under the circumstances that an objection was not made, *id.* at 262, 269 N.Y.S. 765,

d[id] not need to consider any question of prejudice to the defendant, for the difficulty here lies deeper than the violation of a mere procedural right. It affects the very organization of the court by which the defendant has been tried. It is not sufficient that he was tried within a court room; he was entitled to a trial before a duly constituted court. Such a trial could not be had except under the direction and superintendence of a judge. To such a trial the defendant was entitled, not intermittently, but from the beginning to the very end.

*Id.* at 261, 269 N.Y.S. 765,. The court emphasized that the "rule which requires the presence of the judge applies not only to the taking of evidence, but to all the proceedings on the trial, including the arguments of counsel." *Id.* at 263–64, 259 N.Y.S. at 770. The problem, the court explained, was that "[i]f any misconduct took place in the court room during such

absence there would be no judge present to whom defendant's counsel could make complaint, or to determine what occurred in his absence." *Id.* at 265, 259 N.Y.S. at 771. The court further emphasized, in stark terms, the significance of the failure of judicial supervision:

> [T]he presiding judge may at no time relinquish control of the proceedings without producing a dissolution of the court. No one would assert that the trial could proceed in the absence, no matter how brief, of a juror in the case. In our opinion the absence of the judge is as important and as fatal to the judgment.... The serious consequences of any relaxation of the rule must be self-evident. The trial of a felony case, in whole or in part, in the absence of a judge, especially against the defendant's objection, is repugnant to the conception of trial by jury as that term has always been understood and applied. If prejudice is required to be shown in such a case, then we dispense entirely with the necessity for the presence of the trial judge, for prejudice occurring even in his presence would be ground for the reversal of the judgment. Shall we then say that the same consequences follow where the trial is conducted without, as when it is conducted with, a judge? If, as we agree, a defendant has the right to a trial before a properly constituted court, then his rights are violated when, without his consent, any part of the trial is conducted before a body not constituted as required by law.

*Id.* at 268–69, 269 N.Y.S.2d at 775 (citation omitted).

In *People v. Ahmed,* 66 N.Y.2d 307, 487 N.E.2d 894, 496 N.Y.S.2d 984 (1985), the New York Court of Appeals held that even a defendant's *consent* could not overcome the right to judicial supervision during jury deliberations. The court stated:

We find that the absence of the trial judge, and the delegation of some of his duties to his law secretary during a part of the jury's deliberations, deprived the defendant of his right to a trial by jury, an integral component of which is the supervision of a judge. That defense counsel consented to this arrangement does not constitute either a failure to preserve a question of law for our review or a waiver. Generally, a defendant may not present a question of law to this court unless he has preserved it for review by timely objection in the trial court. However, we have long recognized that certain errors need not be preserved, and, even if consented to, they may still present a question of law. More recently, such errors have been classified as those that would affect the organization of the court or the mode of proceedings prescribed by law.

*Id.* at 310, 487 N.E.2d at 895, 496 N.Y.S.2d at 985 (internal citations and quotation marks omitted).

In *People v. Lumpkin,* 173 A.D.2d 738, 570 N.Y.S.2d 620 (2d Dep't 1991), the court noted that consent would not waive a judicial supervision claim concerning a trial judge's absence during the reading back of testimony during jury deliberations. The court stated:

> [A] Judge's absence from the court room during the reading back of testimony, with or without consent, is improper, and we strongly disapprove of it. It does not comport with the Judge's supervisory role, or with the established expectations and conventions that underlie the judicial function.

*Id.* at 740–41, 570 N.Y.S.2d at 622 (internal citation omitted).

In *People v. Bayes,* 78 N.Y.2d 546, 584 N.E.2d 643, 577 N.Y.S.2d 585 (1991), the New York Court of Appeals similarly held that a judicial supervision claim pertaining

to a trial judge's delegation to a law secretary of the task of supervising a deliberating jury, including rereading instructions and responding to jury notes, "deprives a defendant of the right to trial by jury because an integral part of that right is the supervision of a Judge." *Id.* at 551, 584 N.E.2d at 645, 577 N.Y.S.2d at 587. The Court of Appeals further explained

> that the Judge's failure to retain control of the jury deliberations, because of its impact on the constitutional guarantee of trial by jury, implicated the organization of the court or mode of proceedings prescribed by law, and therefore presented a question of law *even absent timely objection.*

*Id.* (emphasis added).

In *People v. Pinkney*, 272 A.D.2d 52, 709 N.Y.S.2d 10 (1st Dept. 2000), the court held that the absence of a trial judge during part of the jury's voir dire required a new trial, regardless of the defendant's explicit waiver of any objection. The court began by emphasizing that

> [t]he presence of and supervision by a Judge constitutes an integral component of the right to a jury trial ... Since the selection of the jury is part of the criminal trial ... a defendant has a fundamental right to have a Judge preside over and supervise the voir dire proceedings while prospective jurors are being questioned regarding their qualifications. A Judge who relinquishes control over the proceedings or delegates the duty to supervise deprives a defendant of the right to a trial by jury, requiring reversal ... Here, the Judge's absence from portions of the actual voir dire examination of jurors by counsel violated these fundamental precepts. In the end, it is the Judge who is the ultimate arbiter of a prospective juror's fitness to serve.

*Id.* at 52–53, 709 N.Y.S.2d at 11–12 (internal quotation marks omitted) (alterations in original). The court recognized that "the defense consented to the trial Judge's absence," but it nonetheless found that the "error constitutes a defect in the organization of the court or the mode of proceedings which, even if consented to, still presents a question of law." *Id.* at 53, 709 N.Y.S.2d at 12 (citations and internal quotation marks omitted).

These cases make clear that New York state courts do not typically require judicial supervision claims be preserved. Indeed, the only case that holds to the contrary is *People v. Hernandez*, 94 N.Y.2d 552, 708 N.Y.S.2d 34, 729 N.E.2d 691 (N.Y. 2000), which relies entirely on the state court's decision in the instant case, *People v. Monroe*, 90 N.Y.2d 982, 688 N.E.2d 491, 665 N.Y.S.2d 617 (1997), for support. That decision, however, was three years after Monroe's case was decided by the Court of Appeals. Within federal constitutional limits, New York certainly may alter its rules of criminal procedure to require contemporaneous objections by defendants to preserve particular grounds for appeal. The point here, however, is at the time Monroe was tried, it was clear that New York did not have such a requirement as to claims of judicial supervision. Certainly, there is no firmly established rule requiring contemporaneous objection in this circumstance, and there is no "even-handed" application of the rule to all judicial supervision claims. Accordingly, the second factor of *Lee* weighs heavily in favor of petitioner. *Cf. Lee*, 534 U.S. at 382, 122 S.Ct. 877 (noting that "no published Missouri decision directs flawless compliance with [the relevant procedural rules] in the unique circumstances this case presents"); *Cotto*, 331 F.3d at 247 (holding that "the [state] law does not require [a party] to make repeated pointless protests after the court has ruled. At a minimum, such a

practice is not firmly established and regularly followed in the circumstances presented in this case." (citation and internal quotation marks omitted)).

The final factor concerns whether Monroe substantially complied with the contemporaneous objection rule. We must keep in mind "the asserted state interest behind the contemporaneous objection rule-to ensure that the parties draw the trial court's attention to any potential error while there is still an opportunity to address it." *Cotto,* 331 F.3d at 245. "The Supreme Court has recognized that contemporaneous objection rules of this kind serve legitimate state interests in ensuring that judges are promptly alerted to errors at trial . . . ." *Id.* (internal quotation marks and alterations omitted). In *Lee,* 534 U.S. at 382–83, 122 S.Ct. 877, the Supreme Court found that the petitioner substantially complied with the rule requiring a written motion for continuance when he made an oral motion for continuance, and in *Cotto,* 331 F.3d at 245–47, we held that the petitioner substantially complied with the rule requiring a contemporaneous objection where the petitioner made his objection clear to the state trial court prior to the asserted error.

Here, Monroe did not contemporaneously object to the jury's initial *ex parte* viewings. Since the judge announced that such viewings were taking place, Monroe's counsel should have known of them. Compliance with the state's procedural rule "given the realities of trial" would have been uncomplicated and straightforward— Monroe would simply have to voice an objection at the time to preserve the issue. Thus, nothing complex was required of Monroe to follow the state's legitimate rule, unlike the circumstances of *Lee* or *Cotto.* Therefore, the third *Cotto* factor counsels against Monroe.

■ Despite the first and third *Cotto* factors going against Monroe, the fact that at the time of his trial the state was not usually requiring a contemporaneous objection—the second *Cotto* factor—predominates. Therefore, Monroe's failure to object contemporaneously is not an adequate and independent bar to our review.

Neither the New York Court of Appeals, on direct appeal, nor the District Court, on habeas review, reached the merits of Monroe's judicial supervision claim as an alternative holding. We thus remand to the District Court to address the merits of the claim in the first instance. In doing so, the District Court should also address the appropriate standard of review. That is, it must be determined whether, because the intermediate appellate court reached the merits of Monroe's judicial supervision claim, federal courts review the intermediate appellate court's decision using AEDPA deference, or whether, in light of the state supreme court's erroneous holding as to a procedural bar, we consider Monroe's claim *de novo.*

## II. Right to Be Present Claim

The District Court reached the merits of Monroe's right to be present claim and concluded that the decision of the Court of Appeals was not contrary to or an unreasonable application of federal law. A federal court may not grant an application for a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the decision was (1) "contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A writ of habeas corpus is justified "if the state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An incorrect ruling is not always an unreasonable one. *See Cotto,* 331 F.3d at 248 ("Although it is clear that the question is 'whether the state court's application of clearly established federal law was objectively unreasonable,' the precise method for distinguishing 'objectively unreasonable' decisions from merely erroneous ones is less clear." (citation omitted) (quoting *Williams,* 529 U.S. at 409, 120 S.Ct. 1495)). "Some increment of incorrectness beyond error is required. We caution, however, that the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (quoting *Matteo v. Superintendent, SCI Albion,* 171 F.3d 877, 889 (3d Cir.1999)). "We do not believe AEDPA restricted federal habeas corpus to that extent." *Id.*

■ The New York Court of Appeals held that Monroe's right to be present at all stages of a criminal trial was not violated here because "[g]iven that the exhibits had already been received in evidence, the viewings here were at best an ancillary proceeding." *People v. Monroe,* 90 N.Y.2d 982, 984, 665 N.Y.S.2d 617, 618, 688 N.E.2d 491, 492 (1997). The court held that Monroe's potential contribution to the viewings was "minimal" and that his absence "did not compromise his ability to advance his position or counter the People's theory." *Id.*

Judge Titone, in his dissent in the state appeal, presents a compelling argument

for why the state court was *incorrect* in finding that Monroe's constitutional and statutory right to be present at all stages of a criminal proceeding was not violated. *See* 90 N.Y.2d at 985–96, 665 N.Y.S.2d at 618–20, 688 N.E.2d 492–94. (Titone, J., dissenting). It is another question, however, whether the state court's decision was *unreasonable* in light of the relevant Supreme Court cases.

■ The Supreme Court has held that the right to be present at one's criminal trial is protected by due process in cases where, as here, the claimed error does not relate to the defendant's opportunity to confront witnesses or evidence.[2] *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). According to the Court, a defendant has a due process right to be present at a criminal proceeding "'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge'" and when "'a fair and just hearing would be thwarted by his absence.'" *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 108, 54 S.Ct. 330, 78 L.Ed. 674 (1934)). In other words, a defendant is guaranteed the right to be present at any stage that is critical to the outcome of the trial and if his presence would contribute to the fairness of trial. *Id.*

Here, there is the possibility that Monroe could have learned something relevant to his defense by attending the jury's viewing. As Judge Titone noted, Monroe could have watched the jurors' reactions when viewing the exhibits and, based on their reactions, altered his trial strategy by fo-

---

**2.** Monroe does not argue that he was deprived of the opportunity to confront the evidence in question.

cusing on certain exhibits. On the other hand, the benefit of this presence is speculative and likely to be minimal. *Cf. Stincer*, 482 U.S. at 747, 107 S.Ct. 2658 (noting that in *Stincer* and *Gagnon*, there was no indication that the defendant "would [ ] have gained anything by attending" jury's viewing of competency hearing (quoting *Gagnon*, 470 U.S. at 527, 105 S.Ct. 1482)). The Supreme Court was presented with similar circumstances in *Snyder*, where the jury viewed the crime scene outside of the defendant's presence, and held that the defendant would not have gained anything by attending the jury's trip to the crime scene. 291 U.S. at 108, 54 S.Ct. 330; *see id.* at 107, 54 S.Ct. 330 (stating that due process does not require "presence when presence would be useless, or the benefit but a shadow"). As in *Snyder*, the viewing was "a bare inspection" and nothing was said by court officials or any parties "to direct the attention of the jury to one feature or another." *Id.* at 108, 54 S.Ct. 330.

Furthermore, as in *Snyder*, Monroe could not have contributed to the jury's viewings of the evidence. To the extent that Monroe argues that he could have guarded against the juror's unauthorized deliberation during viewing the exhibits, the trial court's cautionary instruction given to the jury prior to viewing the exhibits served this very goal. In somewhat similar circumstances, we have held that due process is not violated where a court provides transcripts of testimony to the jury outside the defendant's presence during jury deliberations. *See United States v. Schor*, 418 F.2d 26 (2d Cir.1969). There, we stated:

> Appellant points out that Rule 43 of the Federal Rules of Criminal Procedure calls for the presence of the defendant 'at every stage of the trial,' but in strict theory, the command of Rule 43 should not require defendant's presence when a

transcript is sent to the jury any more than when an exhibit is sent. In either case, the jury gets no more than 'what they had already been given.' *See Downing v. United States,* 348 F.2d 594, 601 (5th Cir.1965), *cert. denied,* 382 U.S. 901, 86 S.Ct. 235, 15 L.Ed.2d 155 (1965). For the same reason, such a procedure would not necessarily deprive a defendant of due process or the right to confrontation.

*Id.* at 31; *see also United States ex rel. Shapiro v. Jackson,* 263 F.2d 282 (2d Cir. 1959) (finding no violation of due process where testimony of three witnesses was read to jury outside of the defendant's presence after the jury had retired at the close of the defendant's trial); *United States ex rel. Spinney v. Fay,* 228 F.Supp. 500 (S.D.N.Y.1964) (holding that district court's submission of exhibits outside of the defendant's presence during jury deliberations did not violate his constitutional rights). Another circuit court of appeals has found similarly that a trial judge's transmission of evidence to a jury outside the presence of the defendant does not violate the defendant's Sixth Amendment right to be present. *See United States v. Holton,* 116 F.3d 1536, 1545–46 (D.C.Cir. 1997) (citing *United States v. Sobamowo,* 892 F.2d 90, 96 (D.C.Cir.1989) and *Dallago v. United States,* 427 F.2d 546, 552–53 (D.C.Cir.1969)).

In light of all of the foregoing, it cannot be said that the state court's ruling on Monroe's right to be present clam was an *unreasonable* application of Supreme Court precedent. Accordingly, the District Court did not err in so holding and in rejecting Monroe's habeas petition as to his right to be present claim.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court is **AFFIRMED**

IN PART, VACATED IN PART, and REMANDED IN PART for further proceedings consistent with this opinion. We affirm the District Court's denial of the habeas petition as to Monroe's right to be present claim, but vacate its denial of the habeas petition as to Monroe's judicial supervision claim. Furthermore, we remand to the District Court, to determine, in the first instance, the appropriate standard of review where a habeas claim was adjudicated on the merits by the state intermediate appellate court but found procedurally barred by the highest state court, and to consider, on the merits, whether Monroe's right to judicial supervision of his trial was violated where the trial judge allowed the jury to view evidence admitted but not seen by the jury while the court was adjourned and outside the judge's presence.