Judge STRAUB dissents in a separate opinion.
CARDAMONE, Circuit Judge.
On this appeal, after defendant had been convicted of burglary in state court, he filed a petition in the United States District Court for the Southern District of New York seeking habeas corpus relief alleging a violation of his due process rights based on identity evidence admitted against him at trial. It is clear that the burglar’s identity did not at the time of the burglary press itself on the victim. Yet, on appeal from the denial of habeas relief defendant faces a procedural hurdle before the merits of his argument may be examined. If firmly established and regularly followed state law provides an independent (from the federal issue raised) and adequate basis for sustaining the state court’s judgment, a federal court is precluded from reviewing the merits of a petitioner’s claim for habeas relief so long as application of the state rule was not exorbitant on the facts of petitioner’s case. Here, the district court denied defendant habeas relief on the merits. We do not reach the merits because such review is barred by independent and adequate state law grounds.
Defendant Thomas Garvey (defendant or petitioner) appeals from the September 21, 2005 order of the Southern District of New York (Wood, J.) dismissing his petition for a writ of habeas corpus. Defendant’s principal argument is that the New York state trial judge (Bernstein, J.) violated Garvey’s due process rights by allowing into evidence his identification allegedly made under suggestive circumstances. The state trial court judge reasoned that since Garvey was not in police custody at the time of the identification his claim of identification under suggestive circumstances was groundless. On appeal to the New York State Supreme Court, Appellate Division, Garvey asserted that even if the suggestive identification was entirely orchestrated by civilians, it still should not have been admitted into evidence against him, and instead should have been quashed. The appellate division ruled that Garvey’s due process claim was unpre-served on appeal because that claim was not raised at trial as required by the applicable New York rule of criminal procedure. Garvey contends before us that the state procedural rule was misapplied in his case and thus does not constitute an adequate state ground for decision that would bar federal habeas jurisdiction.
The district court found Garvey’s claim was not procedurally barred, but nonetheless dismissed the petition after reviewing the merits. In our view Garvey’s claim was procedurally barred. Hence, while we affirm the result reached in the district court, we do so on different grounds.
BACKGROUND
A. The Burglary, and Identification of Defendant
At 4:40 in the early morning of September 20, 1996 Violet McKenzie was abruptly *712 awakened in her Bronx County home when she heard noises in her downstairs kitchen. McKenzie got out of bed, turned on the lights at the top of the stairs, and began to walk downstairs. As she went down she saw two strange men hurriedly fleeing from her house carrying what appeared to be her personal property in their arms.,
McKenzie had two opportunities at the scene of the crime to view one of the perpetrators, whom she later identified as Garvey. She first observed him for 30 seconds at a distance of 12 to 15 feet in the hallway of her home. She observed him a second time from a second floor window as he quickly walked away. McKenzie later testified that on both occasions she was able to observe the person’s clothing, skin color, and facial hair. But in the police report she made at 5:40 a.m. on the day of the burglary, McKenzie was unable to provide a physical description of the thief. According to routine police procedure, which was followed here, the reporting officer asked McKenzie to provide a physical description of the intruder, including such details as his age, height, weight, hair, facial hair, complexion, and clothing. The complaint report reflects that the only description McKenzie was able to provide the officer at that time was that the person she observed was wearing “dark clothing.” Because such is hardly a distinguishing characteristic of a nighttime burglar, from this it is not surprising that the officer concluded McKenzie was unable to identify the perpetrator of the burglary.
About five hours later that same morning, at 10:30 a.m., McKenzie was summoned to her neighbor’s yard. The neighbor’s husband, Theodore Gaines, had caught a man retrieving “some type of video machine” from Gaines’ trash cans. The neighbor knew McKenzie had been burglarized a few hours earlier, so Gaines and other neighbors surrounded Garvey— whom they believed might be one of the burglars — to give McKenzie an opportunity to come over and see if she could identify him. When McKenzie arrived in Gaines’ yard, she saw Gaines holding Garvey. At Garvey’s feet was McKenzie’s video compressor, an object that had been taken during the burglary. She immediately identified Garvey as the person whom she had seen earlier that morning.
Two police officers, Dwayne Davis and John Raftery, arrived a few minutes later, and found Garvey surrounded by a group of people in Gaines’ yard. Officer Raftery escorted Garvey to one side for his own safety, while Officer Davis spoke to Gaines. As Officer Davis spoke with Gaines, McKenzie approached Officer Davis and informed him that Garvey was one of the men that had burglarized her home just hours before. Upon learning this, the officers placed Garvey under arrest.
B. Prior Proceedings
On October 1, 1996 Garvey was indicted for burglary. in the second degree, N.Y. Penal Law § 140.25[2], grand larceny in the third degree, N.Y. Penal Law § 155.35, and criminal possession of stolen property in the third degree, N.Y. Penal Law § 165.50.
Before trial Garvey moved to suppress McKenzie’s identification of him at the time of his arrest, arguing that it was suggestive. Defendant maintained he was identified by McKenzie under suggestive circumstances because he was handcuffed and in police custody. The trial court conducted a hearing where the two police officers testified regarding the events occurring at Garvey’s arrest. The state trial court ruled the evidence of McKenzie’s identification of Garvey would not be excluded at trial, stating:
*713 I make the following conclusions of law:
No suggestive acts occurred by the police department. The holding of the defendant initially was by a private citizen and when the officer was investigating it, another private citizen, identifying herself, approached him and said that she was a witness to complaint of a burglary occurring shortly before in her premises.
The officer had probable cause to arrest defendant. No suggestiveness occurred, and I find that the out-of-court identification may be testified to and if there is any in-court identification, that, of course, may be testified to, also.
As a result, McKenzie’s in-court and out-of-court identifications of defendant were both admitted into evidence at his trial.
Garvey was convicted of burglary in the second degree by a jury. Judgment was rendered by the New York Supreme Court, Bronx County, on March 31, 1998, and since Garvey was a second felony offender, he was sentenced to a ten-year term of imprisonment. On appeal to the Appellate Division, Garvey urged for the first time that his identification should have been excluded because of civilian-orchestrated suggestive circumstances. The appellate division ruled that since this claim had not been raised at trial, it was not preserved. People v. Garvey, 278 A.D.2d 74, 717 N.Y.S.2d 181, 182 (1st Dep’t 2000). The First Department also noted that were it to review the merits of Garvey’s claim, it would find that the identification was sufficiently reliable under all the circumstances. Id.
Garvey sought leave to appeal that ruling to the New York State Court of Appeals. On March 5, 2001, the request was denied. See People v. Garvey, 96 N.Y.2d 783, 725 N.Y.S.2d 647, 749 N.E.2d 216 (2001) (table). On June 4, 2002 Garvey sought a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254 based on his claim that it was error for the state trial court to admit into evidence the allegedly suggestive identification. The district court denied the petition after considering the merits. A notice of appeal was filed with this Court on October 24, 2005.
DISCUSSION
I Standard of Review
When this Court reviews a district court ruling on a habeas corpus petition, we examine the factual findings of the district court for clear error, but we consider questions of law, like the one at issue here, de novo. See Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir.2006); Campusano v. United States, 442 F.3d 770, 773 (2d Cir.2006).
II Independent and Adequate State Law Grounds
Federal courts generally will not consider a federal issue in a case “if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.” Lee v. Kemna, 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002) (alteration and emphases omitted). This rule applies regardless of whether the independent state law ground is substantive or procedural and whether the case is in federal court on direct review or from state court via a habeas corpus petition. Id. However, the state law ground is only adequate to support the judgment and foreclose review of a federal claim if it is “firmly established and regularly followed” in the state. Id. at 376, 122 S.Ct. 877. Further, in certain limited circumstances, even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the *714 rule in a particular case is “exorbitant.” Id. In Lee, the Supreme Court factored in three considerations to determine that application of the firmly established and regularly followed state procedural rule would be exorbitant. Id. at 381, 122 S.Ct. 877. Although we have observed that these three factors are not a test for determining adequacy, they are nonetheless used as guides in evaluating “the state interest in a procedural rule against the circumstances of a particular case.” Id. at 381-85, 122 S.Ct. 877; see Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir.2003). The three factors are
(1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court’s decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had “substantially complied” with the rule given “the realities of trial,” and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.
Cotto, 331 F.3d at 240.
Since the adequacy of a state procedural bar to the assertion of a federal question is itself a federal question, Lee, 534 U.S. at 375, 122 S.Ct. 877, we must ascertain whether the state rule at issue here is firmly established and regularly followed, and further whether application of that rule in this case would be exorbitant. To do so, we look at the statute and case law construing it. Cotto, 331 F.3d at 243.
Ill State Procedural Bar
Under New York statutory law, there are two distinct ways a question of law can be preserved for appeal. The first is through an objection at trial by a party later claiming error. N.Y.Crim. Proc. Law § 470.05(2). The second is when the trial court makes an express ruling with regard to a particular question. Id. We consider in turn whether the issue Garvey raised on appeal in state court was preserved in either of these two ways.
A. What Kind of “Protest” is Sufficient Under § 4.70.05(2) and the Case Law Interpreting It?
Under the New York statute, a question of law is preserved for appeal
[W]hen a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an “exception” but is sufficient if the party made his position with respect to the ruling or instruction known to the court.
Id. New York courts have explained that to preserve a claim of error in the admission of evidence at trial under § 470.05(2) a defendant must make his or her position known to the court. People v. Gray, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 652 N.E.2d 919 (1995). The purpose of this rule is to apprise the trial judge and the prosecutor of the nature and scope of the matter defendant contests, so that it may be dealt with at that time. People v. Jones, 81 A.D.2d 22, 41-42, 440 N.Y.S.2d 248 (2d Dep’t 1981). A general objection is not sufficient to preserve an issue since such would not alert the court to defendant’s position. See Gray, 86 N.Y.2d at 20, 629 N.Y.S.2d 173, 652 N.E.2d 919. Instead New York’s highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must specifically focus on the alleged error. Id. at 19, 629 N.Y.S.2d 173, 652 N.E.2d 919. See also People v. Parsons, 30 A.D.3d 1071, 816 *715 N.Y.S.2d 271, 271 (4th Dep’t 2006) (“Defendant failed to preserve for our review his further contention that the evidence is legally insufficient ... inasmuch as his motion to dismiss was not specifically directed at that alleged insufficiency.”); People v. Rodriguez, 262 A.D.2d 428, 693 N.Y.S.2d 54, 55 (2d Dep’t 1999) (defendant’s claim “is unpreserved for appellate review since it was not advanced with specificity before the trial court”); People v. McLane, 256 A.D.2d 10, 682 N.Y.S.2d 24, 25 (1st Dep’t 1998) (“By failing to elaborate on the basis for his objection to the court’s charge on justification, defendant failed to provide the court with a fair opportunity to rectify any error and failed to preserve the issue for appellate review.”); People v. Cooper, 147 A.D.2d 926, 537 N.Y.S.2d 700, 701 (4th Dep’t 1989) (“Although defendant objected on two occasions to receipt of such evidence, neither objection specifically questioned admissibility upon the ground now raised” and consequently claimed error “was not preserved for appellate review.”).
This rule applies with respect to motions to suppress as it does in every other context. See, e.g., People v. Brooks, 26 A.D.3d 739, 808 N.Y.S.2d 517, 518 (4th Dep’t 2006) (“In support of his further contention that the [trial] court erred in denying his suppression motion, defendant raises a ground not raised before the suppression court. Thus, defendant’s contention is not preserved for our review.”); People v. Fabricio, 307 A.D.2d 882, 763 N.Y.S.2d 619, 620 (1st Dep’t 2003) (“Since defendant’s suppression motion [at trial] was made on completely different grounds from those raised on appeal, his present challenges ... are unpreserved.”).
B. Was Garvey’s Protest at Trial Sufficient to Preserve the Issue He Raises on Appeal?
In this case the defendant timely moved to suppress the identification testimony. He argued in an omnibus motion before the trial court that the fact that the victim identified him after he was seized and handcuffed by the police made that identification unnecessarily suggestive. The defendant asserted that the proper course of action would have been for the arresting officers to have taken him back to the precinct to be put in a lineup. It is clear from the record that the defendant’s suppression motion was based on his contention that the police orchestrated an unduly suggestive identification. Defendant’s motion to suppress the identification was denied because the trial court found that defendant was not in police custody at the time the identification was made. There can be no question defendant preserved his right to appeal on this ground and attempted to persuade the Appellate Division that he was in fact in police custody at the time the identification occurred.
However, this is not the ground on which defendant based his appeal. Rather, on appeal defendant averred for the first time that his identification should have been suppressed due to the suggestive circumstances created by civilians. The Appellate Division deemed this claim unpreserved. Garvey, 717 N.Y.S.2d at 182.
New York courts consistently interpret § 470.05(2) to require that a defendant specify the grounds of alleged error in sufficient detail so that the trial court may have a fair opportunity to rectify any error. See McLane, 682 N.Y.S.2d at 25. Here, defendant did not provide the trial court with a fair opportunity to consider the legal issue of whether the civilian-facilitated identification was suggestive and needed to be suppressed. The fact that the defendant had declared that the identification was suggestive because he *716 was in police custody at the time of the identification did not put the trial court on notice that there might be a legal issue as to whether a civilian-facilitated identification could be problematic as well. Under the firmly established and regularly followed New York interpretation of § 470.05(2), this issue cannot be raised for the first time on appeal.
The dissent’s contention that Garvey’s counsel was prevented from presenting the issue of civilian suggestiveness at the suppression hearing because the trial court interrupted him is undermined by both the limited nature of the suppression motion and counsel’s statements at the hearing. The dissent does not, nor could it, dispute the fact that Garvey’s motion did not expressly challenge his identification based upon civilian conduct. In fact, the motion cannot be read to encompass anything beyond a police suggestiveness claim:
The People have given notice of their intention to offer testimony identifying the defendant herein as the person who committed the crimes charged, which testimony will be given by a witness who has previously identified the defendant at a “corporeal showup” conducted on September 20, 1996. Defendant seeks herein to suppress said identification on the ground that the “showup” was unconstitutionally suggestive, and was the product of an illegal arrest.
Upon information and belief (source: police reports and investigations) on September 20, 1996, the defendant was walking along a public street in the vicinity of Grace Avenue and Ely Avenues, Bronx, New York, when he was seized by several officers. ...
Despite the fact that the defendant was not engaged in criminal conduct, he was seized by police and handcuffed. Almost six and one half hours after the alleged burglary took place the witness identified the defendant in a corporeal show-up as he stood handcuffed in the street.
The defendant contends that the identification violated his constitutional rights because it was so unnecessarily suggestive as to be a denial of due process of law.
Affirmation in Supp. of Def.’s Mot. to Suppress at 8-9, New York v. Garvey, No. 7174/96 (Sup.Ct. Bronx County Dec. 9, 1996) (emphases added).
As even the dissent recognizes, Garvey’s allegation that the identification was flawed rested upon his counsel’s belief that Garvey had already been handcuffed by the police when he was identified. Based upon the foregoing, it would have been reasonable for the trial court to anticipate hearing only the police conduct issue at the hearing and instruct counsel to “rest on the record” accordingly. Indeed, counsel never indicated that the record contained anything other than a police suggestiveness claim.
In' addition, the dissent’s conclusion that our opinion in Dunnigan v. Keane, 137 F.3d 117, 128 (2d Cir.1998), could not have apprised the trial court to consider the issue of civilian suggestiveness necessarily reveals the likelihood that Garvey would not have known to raise it. Counsel’s foundational questions to Officer Davis related to the fact that he observed a crowd of people when he came upon the scene. The questions are not equivalent to a discrete objection based upon civilian suggestiveness. Given the prevailing law in New York at the time, the questions sought only to show that the civilians were holding Garvey before the police arrived. Such a showing would relate to the issue of whether the identification procedures were orchestrated by the police. In short, there is nothing in the record to show that Garvey adequately challenged his identifica *717 tion based upon civilian, as opposed to police, conduct, and any inference to the contrary is purely speculative.
C. When Has a Court Expressly Decided an Issue Under § 470.05(2)?
Under New York law, even in the absence of a proper objection on a particular issue, a question of law is preserved for appeal if “in reponse [sic] to a protest by a party, the court expressly decided the question raised on appeal.” § 470.05(2). New York’s highest court explained how this standard should be applied in a case involving a defendant whose U-Haul rental van was pulled over by police. See People v. Turriago, 90 N.Y.2d 77, 659 N.Y.S.2d 183, 681 N.E.2d 350 (1997). In Turriago, after the defendant consented to a police search of his vehicle, the police found a dead body inside. At trial, the defendant argued that his consent had been involuntary, and the evidence should therefore be suppressed. Id. at 82, 659 N.Y.S.2d 183, 681 N.E.2d 350. The trial court found the defendant’s consent to the search was voluntary and denied suppression of the physical evidence. Id. On appeal, the Appellate Division ruled the consent invalid because “the police lacked a founded suspicion that criminal activity was afoot so as to give rise to the common-law right to inquire” when they pulled the vehicle over. Id. at 83, 659 N.Y.S.2d 183, 681 N.E.2d 350.
The Court of Appeals reversed, emphasizing that under § 470.05(2), the trial court must expressly decide an issue before it is preserved on appeal. Id. at 83-84, 659 N.Y.S.2d 183, 681 N.E.2d 350. Turriago noted that while the trial court had “allu[ded] to the subjective suspicions of the troopers in seeking to search the rental van,” those comments “were made in response to defendant’s claim of involuntariness of his consent.” Id. at 83, 659 N.Y.S.2d 183, 681 N.E.2d 350. Because the trial court had never “expressly decided that the request for consent to search was justified by a founded suspicion of criminal activity,” that issue had not been preserved on appeal. Id. at 84, 659 N.Y.S.2d 183, 681 N.E.2d 350 (emphases omitted). The Court of Appeals emphasized that, in determining whether particular statements of a trial court constitute a ruling on an issue not raised by the parties, it is essential to look to the context in which those statements are made. Id. at 83, 659 N.Y.S.2d 183, 681 N.E.2d 350.
Turriago indicates three things that are useful in determining how to apply § 470.05(2) in the present case. First, New York courts take seriously § 470.05(2)’s requirement that an issue must be expressly decided by the trial court (if not raised by a party) for it to be preserved for appeal. See People v. Baughan, 28 A.D.3d 352, 812 N.Y.S.2d 528, 529 (1st Dep’t 2006) (finding defendant’s argument on appeal unpreserved because the court did not expressly decide the issue); People v. Alston, 9 A.D.3d 268, 778 N.Y.S.2d 881, 881 (1st Dep’t 2004). Second, Turriago instructs that when a court rules against suppressing evidence on one ground that ruling does not preserve for appeal all other potential grounds for suppressing that evidence. See People v. Cusumano, 108 A.D.2d 752, 484 N.Y.S.2d 909, 912 (2d Dep’t 1985) (“[DJefendant’s present challenge to the court’s ruling which denied suppression of his statements to the police was also not preserved for appellate review since this particular ground for suppression was not raised at the hearing.”). Third, Turriago tells us that statements made by the trial court that might imply that it was considering an issue not raised by the parties should be read in context rather than in a vacuum.
*718 D. Did the Trial Court Expressly Decide the Issue Garvey Raised on Appeal?
In this case, the trial court ruled that
No suggestive acts occurred by the police department. The holding of the defendant initially was by a private citizen and when the officer was investigating it, another private citizen, identifying herself, approached him and said that she was a witness to complaint of a burglary occurring shortly before in her premises.
The officer had probable cause to arrest defendant. No suggestiveness occurred, and I find that the out-of-court identification may be testified to....
The state trial court at no point expressly decided whether the civilian-arranged identification was suggestive. Although the court stated that “no suggestiveness occurred,” this conclusory statement was clearly limited to suggestive acts by the police&emdash;the sole source of suggestiveness raised by the defendant in his motion and at the hearing. It would be strange indeed if, in this single sentence, the trial court intended to raise and resolve sua sponte the question of whether the civilian-orchestrated identification was unconstitutionally suggestive. Rather, it is clear that the court was simply summarizing its earlier statement that “[n]o suggestive acts occurred by the police department.” Contrary to the dissent’s observation, the trial court’s determination that “[n]o suggestive acts occurred by the police department” was not a “conclusion[] of law bearing] directly on the issue of suggestive civilian conduct” (emphasis added). Rather, the court’s discussion encompassed factual findings relating to the scene of Garvey’s arrest that, by themselves, did not decide the identification issue as a matter of law. Further, under New York law, the fact that the trial court ruled the evidence should not be suppressed on one ground does not preserve for appeal any other ground the defendant might have raised&emdash; but did not&emdash;for suppressing the evidence. Finally, when the court’s decision is read in context, the references to the defendant having been held by civilians do not indicate the trial court was ruling upon whether the civilian-arranged identification was suggestive. Instead, the trial court was simply pointing out that it was parties other than the police who took part in any suggestive acts that occurred. This was relevant because it negated Garvey’s contention that he was in police custody at the time the identification was made. Consequently, we conclude the trial court did not expressly decide the issue that the defendant attempted to raise on appeal.
IV Would it Be Exorbitant to Apply § 470.05(2) in This Case?
Although § 470.05(2) is a firmly established and regularly followed New York procedural rule, it will not bar us from reviewing the federal claim on the merits if the application of the state rule to this case is exorbitant. See Lee, 534 U.S. at 376, 122 S.Ct. 877. To determine whether it would be exorbitant to apply § 470.05(2) in this case, we look at Lee’s three considerations. See Cotto, 331 F.3d at 240. Since the three considerations are closely tied to the facts in Lee, a brief summary of those facts is helpful.
In Lee, the trial court refused to grant the defendant an overnight continuance of his trial to locate subpoenaed, previously present, but suddenly missing witnesses that were key to his defense. 534 U.S. at 365, 122 S.Ct. 877. The trial court explained it was refusing to grant Lee the continuance because it was busy the next day and had another trial scheduled to begin the weekday after that. Id. at 366, *719 122 S.Ct. 877. Having had no opportunity to present alibi witnesses, Lee was subsequently found guilty. Id. The state appellate court disposed of the case on procedural grounds, explaining that Lee’s continuance motion was defective under the state rules. Id. at 365, 122 S.Ct. 877. The Supreme Court ruled that such application of a state rule was exorbitant, based on the following three considerations. Id. at 376, 381-83, 122 S.Ct. 877. We consider each in turn.
(1)Whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court’s decision.
See Cotto, 331 F.3d at 240 (summarizing Lee’s first consideration).
In this case the alleged procedural violation was the defendant’s failure to raise a specific issue before the trial court. It is therefore meaningless to ask whether the alleged procedural violation was actually relied on in the trial court — the violation only first occurred when defendant raised an argument on appeal that he had not raised earlier. We may ask, however, whether perfect compliance with the state rule would have changed the trial court’s decision. Unlike in Lee, where the trial court would have reached exactly the same decision for exactly the same reasons had Lee perfectly complied with the state rules governing continuance motions, here perfect compliance with the state rule would have had an impact on the trial court’s decision. Had Garvey complied with § 470.05(2), the trial court would have had the opportunity to consider whether the civilian-orchestrated identification should be suppressed. Thus, the first consideration does not indicate that this application of § 470.05(2) was exorbitant.
(2) Whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented.
See Cotto, 331 F.3d at 240 (summarizing Lee’s second consideration).
In Lee, the Court demonstrated that in the “unique circumstances” presented, that is, “the sudden, unanticipated, and at the time unexplained disappearance of critical, subpoenaed witnesses on what became the trial’s last day,” the state courts had never before applied the state rule in question. Lee, 534 U.S. at 382, 122 S.Ct. 877. In contrast, this case presents no unique set of circumstances similar to the circumstances in Lee. There was no sudden or unanticipated event that led Garvey not to comply with § 470.05(2). Therefore, the second consideration also does not indicate that application of § 470.05(2) was exorbitant.
(3) Whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate, governmental interest.
See Cotto, 331 F.3d at 240 (summarizing Lee’s third consideration).
The Lee Court deemed the third consideration the “most important.” 534 U.S. at 382, 122 S.Ct. 877. It explained that al-though the fopn of Lee’s continuance motion was defective, he had presented to the trial court all of the information that would have been included in a properly served mótiom Id. at 383-85, 122 S.Ct. 877. Thus, the Supreme Court ruled it would be “so bizarre as to inject an Aliee-in-Wonderland quality into the proceedings” to apply the state procedural rule in such a case. Id. at 383, 122 S.Ct. 877. The Court explained that demanding perfect compliance under the circumstances would not serve any legitimate governmental interest *720 because the essential requirements of the rule had already been substantially met. Id. at 385, 122 S.Ct. 877.
In the present case, in contrast, the defendant did not just violate the formal requirements of § 470.05(2). He violated the very substance of the rule. The basis of § 470.05(2) is that the trial court must be given a fair opportunity to rule on an issue of law before it can be raised on appeal. Had the defendant here put the trial court on notice regarding his argument that the civilian-orchestrated identification was suggestive, perhaps it would have been exorbitant to punish him for not complying with some technical aspect of § 470.05(2). Such is not our case. The defendant violated the very essence of § 470.05(2), and demanding compliance with § 470.05(2) serves a legitimate governmental interest in this case, that is to say, the interest in allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error. Hence, the third consideration, as the first two, does not indicate that this application of § 470.05(2) was exorbitant.
Therefore, because § 470.05(2) is a state law ground on which the New York appellate court’s decision is based, and that ground is both independent of any federal question and adequate under firmly established and regularly followed state law, we will not disturb the state appellate court’s ruling that the defendant’s protest at trial was insufficient to preserve the arguments he wishes to raise on appeal.
Defendant’s claim that the civilian-orchestrated identification should be suppressed was not raised either by specific objection or by the trial court’s decision. As a consequence, the procedural bar of § 470.05(2) constitutes an independent and adequate state ground for the Appellate Division’s holding.
We need not reach or decide the defendant’s federal claims, since there was an independent and adequate state law ground for the state appellate court’s decision to affirm the defendant’s conviction.
CONCLUSION
For the foregoing reasons, the order of the district court dismissing Garvey’s petition for a writ of habeas corpus is affirmed.