06-4859-pr
Richardson v. Greene

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

_____

August Term, 2006

(Argued: June 5, 2007                    Decided: August 14, 2007)

Docket No. 06-4859-pr

_____

WILLIAM HENRY RICHARDSON

*Petitioner-Appellant,*

– v. –

GARY GREENE,

*Respondent-Appellee.*

_____

B e f o r e :    WINTER and B.D. PARKER, *Circuit Judges*, and OBERDORFER, *District Judge.*[*]

_____

Appeal from a September 20, 2006, judgment of the United States District Court for the Southern District of New York (Scheindlin, *J.*), denying petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 because he failed to preserve his *Batson* claim in his state

[*]The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

criminal proceedings, rendering it unreviewable in federal collateral proceedings.

AFFIRMED.

WILLIAM A. LOEB (Robert S. Dean, *on the brief*), Center for Appellate Litigation, New York, NY, *for Petitioner-Appellant*.

SUSAN GLINER (Robert M. Morgenthau, District Attorney, New York County, *on the brief*), Assistant District Attorney, New York, NY, *for Respondent-Appellee*.

LOUIS F. OBERDORFER, *District Judge*:

This is an appeal from a September 20, 2006, judgment of the United States District Court for the Southern District of New York (Scheindlin, *J.*), denying petitioner-appellant William Henry Richardson's § 2254 petition for a writ of habeas corpus. *See Richardson v. Greene*, No. 05-cv-4805, 2006 WL 2707334 (S.D.N.Y. Sept. 20, 2006) (unpublished). Although she denied the petition, Judge Scheindlin granted Richardson a certificate of appealability on the question "whether the state trial court should have foreclosed inquiry into the second step of the *Batson* challenge after reconsidering its initial decision that the state's juror challenges amounted to a pattern of discrimination." *Id.* at *7.

We affirm the judgment of the district court, and hold that petitioner failed to preserve in his state criminal proceedings the arguments made in his federal collateral proceedings. His cause, therefore, cannot be heard in this court.

## BACKGROUND

### State Proceedings

**A.      The Criminal Conviction**

In 1979, Richardson killed an individual over money, for which he was sentenced to 15

years to life imprisonment by the New York criminal justice system.  In 1994, he was released on parole, and immediately began dealing illegal drugs.  On the morning of January 29, 1995, Richardson killed Arundel "Snoop" Williams, his drug supplier, and Charmaine Kennedy, Williams' girlfriend, by shooting them in their heads.

Richardson remained at liberty until February 1999, when he was apprehended on a parole violation and charged by the New York district attorney with the murders of Williams and Kennedy.  At his first trial, the jury failed to reach a verdict.  At his second trial, which is the subject of this habeas appeal, Richardson was convicted of the murders, and on January 9, 2001, he was sentenced to two consecutive terms of 25 years to life imprisonment.

**B.     The Voir Dire**

As is well known, under the rule announced in *Batson v. Kentucky*, 476 U.S. 79 (1986), every person has a right to a trial before a jury impaneled without discrimination by race.  *Id.* at 84-85.  A *Batson* objection may be lodged when a party perceives a pattern of discrimination in the use of peremptory strikes during the voir dire, so-called "step one" or the  "prima facie case" of a *Batson* challenge.  Step two requires that, upon a showing of a pattern of discrimination, the opposing party provide race neutral reasons for its peremptory strikes.  Finally, step three returns the ball to the challenger, who must then show that the professed race neutral reasons were pretextual and prove racial discrimination was the real motive.  *Id.* at 96-98; *see McKinney v. Artuz*, 326 F.3d 87, 97-98 (2d Cir. 2003).

The basis of Richardson's *Batson* claim originated as follows.  Sixteen prospective jurors were initially seated for the voir dire at Richardson's second trial.  Two were subsequently excused, leaving fourteen prospective jurors subject to peremptory strikes.  Of the fourteen, five

were African American women.

The prosecution initially struck four of the prospective jurors, two of whom were African American women, Ms. Renee Hall and Ms. Darbi Hegnew. Defense counsel struck another four prospective jurors. Four of the remaining prospective jurors then were sworn in as part of the jury; two of that four were African American women. This left two prospective jurors of the original fourteen, one of whom was Ms. Tanisha Redmond, the final African American woman. When the prosecution struck Ms. Redmond defense counsel raised an objection pursuant to step one of the *Batson* framework, observing that the defendant was African American and that "the People have used five challenges, three for African American females." J.A. 136.

The prosecution protested that there was no pattern of racial discrimination in its peremptory strikes. However, without expressly ruling that there was such a pattern, the trial judge demanded that the prosecution provide race neutral reasons for its strikes. The prosecution then stated for the record, per *Batson* step two, its reasons for peremptorily striking each of the African Americans. With respect to Ms. Hall, the prosecution stated:

> I would say probably mostly a subjective view of her. I can't give a good reason. Honestly, it had nothing to do with her race. My views are often very subjective.

*Id.* at 139. This reason, which petitioner deems inadequate to survive a *Batson* challenge, is central to—indeed, it is the sole basis of—his habeas petition now before this court.

Thereupon the trial judge, without further comment, directed the prosecution to "[p]ick one" of the African American jurors. The prosecution then explained to the judge that it had already accepted two African Americans as part of the jury. Among the first twelve jurors subject to peremptory strikes, four were African American and the prosecution had accepted two

-4-

of them: "I accepted, I believe, a fairly equal number." *Id.*

At this point the trial judge realized that he had believed, mistakenly, that the prosecution had accepted only one African American juror among the five available in the entire jury pool of fourteen, when in fact the prosecution had accepted two. The trial judge then immediately reversed his initial determination pursuant to *Batson* step one that there was a pattern of discrimination:

> I apologize. I thought [there] was one. But . . . you accepted two
> African Americans. . . .
>
> That is my mistake. I thought you accepted only one. I may have
> picked up on something that defense counsel said which I
> misunderstood. I had the impression that . . . out of four you had
> challenged three. That is in fact . . . not correct. Out of five you
> challenged three and kept well two[.]
>
> * * *
>
> I apologize to you both. If there had been three out of four I might
> have agreed with you. I would have been very suspicious. It is out
> of five African American[s,] three challenged, two accepted.
> Where is the pattern[?]

*Id.* at 140.

The defense protested that there was, in fact, a pattern, noting that "[t]hree of [the prosecution's] five challenges have been African American females." *Id.* at 141. But the trial judge was not persuaded. The prosecution's reasons for striking each juror were irrelevant to the judge, for he "misunderstood the count when [he] turned to the district attorney for the explanation," and this mistake caused him to "demand[] an explanation which . . . the district attorney [was not] required to give." *Id.* at 142-43. The judge reversed his initial determination and ruled that "there [wa]s no pattern of discrimination" at *Batson* step one. *Id.* at 143. Thus, in

making this ruling, the judge did not consider whether the prosecution's reasons were race neutral, per *Batson* step two.

Defense counsel took exception to the judge's ruling that there was no pattern of discrimination, which the court noted. However, defense counsel did not take exception to the court's authority to reconsider or revisit its initial step one determination; nor did he contend that the prosecution's arguably inadequate reasons at *Batson* step two "mooted" any issue concerning *Batson* step one.

The voir dire continued through several more rounds and several additional pools of prospective jurors. Respondent represents that by the time the final jury was selected, five of the twelve jurors were African American.

**C.     The Direct Appeals**

Richardson appealed his sentence and conviction on several grounds in the New York courts, including the *Batson* issue. The Appellate Division rejected Richardson's *Batson* claim because the defense "did not establish a prima facie case of discrimination." *People v. Richardson*, 747 N.Y.S.2d 364 (1st Dep't 2002). The Appellate Division also rejected Richardson's argument that the requirement of a prima facie case became moot:

> [B]ased on a fair reading of the record of the voir dire, we find that although the prosecutor offered explanations for the challenges at issue, the court never ruled on the ultimate question of intentional discrimination. Almost immediately after finding that a prima facie case had been established, the court retracted that determination upon its realization that it had been premised on a factual mistake as to the prosecutor's exercise of challenges.

*Id.* (quotation marks and citation omitted).

Richardson was granted leave to appeal to the Court of Appeals of New York. That court

also rejected Richardson's *Batson* claim, but on a ground different from the Appellate Division:

> [W]e reject defendant's contention that the trial court erroneously denied his *Batson* claim. Defendant asserts that . . . the trial court could not revisit its finding of prima facie discrimination. *Defendant's failure to raise this argument before the trial judge renders this issue unpreserved and beyond our review.*

*People v. Richardson*, 100 N.Y.2d 847, 853 (N.Y. 2003) (emphasis added).

**Federal Collateral Proceedings**

Following the decision of the New York Court of Appeals, Richardson filed this, his first, habeas petition under 28 U.S.C. § 2254 in the United States District Court for the Southern District of New York. Judge Scheindlin, agreeing with the New York Court of Appeals, held that Richardson's claim was procedurally barred, and hence unreviewable in habeas, because his counsel had failed to argue at trial that the judge was precluded as a matter of law from reconsidering and reversing its initial finding of a pattern of racial discrimination.

Nevertheless, the district court decided to grant a certificate of appealability because it believed that reasonable jurists could differ on the issue "whether the state trial court should have foreclosed inquiry into the second step of the *Batson* challenge after reconsidering its initial decision that the state's juror challenges amounted to a pattern of discrimination."

This appeal followed.

**DISCUSSION**

**I.     Scope of the Certificate of Appealability**

To be appealable, a district court's denial of a § 2254 habeas petition must be accompanied by a certificate of appealability from either the district court or a circuit judge or justice. 28 U.S.C. § 2253(c); *see Lozada v. United States*, 107 F.3d 1011, 1015-16 (2d Cir.

1997), *abrogated on other grounds by United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997). The standard for issuing the certificate of appealability is whether "jurists of reason would find it debatable whether the petition states a valid claim." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Where, as here, the denial of the habeas petition is based upon procedural grounds, the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation. *Id.*

Here, it is noteworthy that the district court granted the certificate of appealability on the constitutional merits issue, but not the procedural ground on which it based its decision, thereby violating the holding of *Slack*, *supra*. Nevertheless, where, as here, the district court failed to certify the procedural question, we may "widen" the scope of the certificate of appealability to encompass the procedural issue. *See Green v. Mazzucca*, 377 F.3d 182, 183 (2d Cir. 2004) (per curiam); *Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam).

We do so here, and treat the certificate of appealability as including the procedural default question.

**II.     Procedural Default**

Under the independent and adequate state ground doctrine, a federal court sitting in habeas "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is *independent* of the federal question and *adequate* to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (emphases added); *see Lee v. Kemna*, 534 U.S. 362, 375 (2002). Independent and adequate state law grounds preventing federal review include violations of state procedural rules—for example, the failure to

comply with a state's filing deadline, *see, e.g.*, *Coleman*, 501 U.S. at 743-44. Here, the state law ground on which the New York court rejected petitioner's claim was a violation of the state's preservation rule. That rule requires a contemporaneous objection to any alleged legal error by defense counsel at a criminal trial. N.Y. Crim. P. Law § 470.05(2); *see Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003). It is undisputed that the preservation rule is applied to *Batson* challenges, *see, e.g.*, *People v. James*, 99 N.Y.2d 264, 272 (N.Y. 2002), and it is clear that, in this case, it suffices as a state law ground independent of the federal constitutional issue for purposes of preventing habeas review, *see Cotto*, 331 F.3d at 239.

A question remains, however, as to whether New York's preservation rule is "adequate" to prevent federal collateral review in this case. The issue is governed by federal law. *Lee*, 534 U.S. at 375 ("adequacy" of state procedural bars to the assertion of federal rights "is itself a federal question"). A state preservation rule will be deemed adequate only "if it is . . . firmly established and regularly followed by the state." *Cotto*, 331 F.3d at 239 (quoting *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999)). Moreover, even though a rule generally might be considered firmly established and regularly followed, considered in the specific circumstances of a case, it still might be inadequate to preclude federal review, if its application would be "exorbitant," that is to say, an arid "ritual . . . [that] would further no perceivable state interest," *Lee*, 534 U.S. at 366. *See Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006).[1] In

---

[1]Before this court petitioner does not raise the arguments that the application of the preservation rule in his case is exorbitant, or that his *Batson* challenge was preserved because the trial court expressly decided the question raised on appeal. *See Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007). In any event, such arguments would fail for the same reasons they did in *Garvey*, *id.* at 717-20. Nor does he argue that he is actually innocent of the murders of Kennedy and Williams and thus may avail himself of an exception to the independent and adequate state ground doctrine. *See Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002).

determining whether New York's preservation rule constitutes an adequate state ground, we look to the state's statutes and case law interpreting the rule. *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007).

New York's preservation rule, codified at N.Y. Crim. P. Law § 470.05(2), "require[s], at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error." *Garcia*, 188 F.3d at 78 (quoting *People v. Luperon*, 85 N.Y.2d 71, 78 (N.Y. 1995)). Exhaustively reviewing this rule, a recent scholarly opinion of this court has explained:

> A general objection is not sufficient to preserve an issue since such would not alert the court to defendant's position. Instead New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must *specifically focus on the alleged error*.

*Garvey*, 485 F.3d at 714-15 (citing New York cases) (emphasis added; citation omitted).

Here, we agree with the state high court that petitioner failed to adhere to New York's preservation rule. In these federal collateral proceedings, petitioner argues that the prosecution's failure to articulate any reasons at all with respect to its striking of Ms. Hall constituted a per se *Batson* violation that rendered the trial court's revisitation and reversal of its initial *Batson* step one determination "moot." *See Hernandez v. New York*, 500 U.S. 352, 359 (1991). But the record fails to demonstrate that this argument was "brought to the attention of the trial court at a time and in a way that gave the [trial judge] the opportunity to remedy the problem and thereby avert reversible error." *Garcia*, 188 F.3d at 78. Defense counsel failed to except to the trial judge's vacatur of his initial step one ruling with the clarity that our cases require—if he took

exception at all, which we doubt.

The most that can be said for defense counsel's objections at the state trial is that he complained that the prosecution's reasons were "specious" and not race neutral. *See* J.A. 141-42. But the trial judge never ruled on, or even considered, whether the reasons given by the prosecution were race neutral, per *Batson* step two. In the trial judge's mind, his misapprehension concerning the number of African American jurors ended the matter at step one of *Batson*. *See id.* at 143 ("I demanded an explanation which [the prosecution] [was not] required to give[;] a pattern is not there, sir."). He therefore immediately corrected his error as to the number of challenged jurors and forthwith vacated his *Batson* step one ruling. The prosecution's reasons were completely irrelevant to the judge's revisitation ruling.

It is rare that a *Batson* violation occurs where a prosecutor fails to put forth an adequate explanation at step two. As the Supreme Court has made clear, because the burden of persuasion always rests with the opponent of the strike, "even if the State produces only a frivolous or utterly nonsensical justification for its strike, the case does not end—it merely proceeds to step three." *Johnson v. California*, 545 U.S. 162, 171 (2005); *cf. id.* at 171 n.6. Had a *Batson* error occurred here, to correct the alleged error, defense counsel needed to alert the judge to the incorrectness of his ruling by connecting in some manner, or showing the relevancy of, the prosecution's alleged violation of step two to the judge's finding of no pattern of discrimination at step one. This the defense did not do, instead focusing solely and persistently—even after having protested the prosecution's reasons—on the step one issue, *i.e.*, that a pattern of discrimination existed because the prosecution "ha[d] challenged the majority of black women." *See* J.A. 142. We would not require counsel to articulate a full appellate brief in his objection,

-11-

nor even an explicit statement of the rule of law or citation to the relevant Supreme Court decision upon which the objection stands. *See Cotto*, 331 F.3d at 245-46. But the trial judge must have a *shot* (however remote) at correcting the allegedly erroneous exercise of authority to revisit step one; and to have a shot, he must *know what the alleged error is. See Garvey*, 485 F.3d at 715-16. Here, the trial judge clearly did not—and it seems likely neither did defense counsel, for that matter. The record is devoid of any indication that anyone at trial conceived of the crucial issue: that immediately *revisiting* the *Batson* step one ruling might have been error. The issue is unpreserved and not amenable to federal habeas review.

Indeed, petitioner implicitly concedes that he never preserved the argument he makes in his habeas petition. His theory of the case is that because the *Batson* framework puts to the prosecution the burden of providing race neutral reasons for its strikes, once the prosecution stated the allegedly invalid reasons as to Ms. Hall, it was *unnecessary* to protest and preserve the allegation that it was error for the trial judge to revisit his initial step one ruling. This theory is incorrect, for throughout the *Batson* framework "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam).

Finally, in accordance with New York case law, application of the state's preservation rule is adequate—*i.e.*, firmly established and regularly followed. Our facts resemble closely those of *People v. Smocum*, 99 N.Y.2d 418 (N.Y. 2003). There, the trial court also revisited its initial ruling that under *Batson* step one a prima facie case had been established. Also similar to here, the defense argued in appellate proceedings that the reasons given were (in its view) not race neutral and violated *Batson*. The New York Court of Appeals, however, held that

Smocum's objection was not preserved because at trial he failed to argue that the prosecution's proffered reason for striking the juror, the death of her child, was a pretext for racial discrimination and thus a *Batson* violation. *Id.* at 423. Likewise, petitioner in this case failed to argue at trial that the prosecution's reasons as to Ms. Hall constituted a per se violation of *Batson* and hence were racially discriminatory, rendering "moot" a revisitation of the step one ruling. Where the case law interpreting New York's preservation rule in criminal proceedings displays consistent application in a context similar to the one before us, that rule is firmly established, regularly followed, and hence adequate for purposes of the independent and adequate state ground doctrine. *See Garvey*, 485 F.3d at 715.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is affirmed.