Whitley v. Ercole

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued: December 2, 2010          Decided: June 7, 2011)

Docket No. 10-3119-pr

––––––––––––

DARRYL WHITLEY,

*Petitioner-Appellee*,
– v.–

ROBERT ERCOLE,
IN HIS OFFICIAL CAPACITY AS SUPERINTENDENT, GREEN HAVEN CORRECTIONAL FACILITY,

*Respondent-Appellant.*[1]

––––––––––––

Before: RAGGI, LIVINGSTON, and CHIN, *Circuit Judges.*

Petitioner-appellee Darryl Whitley ("Whitley") commenced this action in the United States

District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) seeking a writ

of habeas corpus to overturn his conviction in New York State court on one count of murder.

Petitioner, whose first trial on these charges resulted in a hung jury, principally challenges admission

at his second trial of the transcript of testimony offered by a State witness at the first without

informing the jury that the witness had, since the first trial, "recanted." The district court granted

the petition, finding Sixth and Fourteenth Amendment error in the trial court's admission of the

transcript without disclosing to the jury the ostensible recantation. Because we conclude that the

---

[1] The Clerk of Court is directed to amend the caption to read as shown above.

1

claim was not properly raised and preserved before the trial court and was thus procedurally defaulted under New York state law, we reverse the judgment of the district court and remand for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

––––––––––

BARRY ROBERT OSTRAGER (Juan A. Arteaga, *on the brief*), Simpson Thacher & Bartlett LLP, New York, New York, *for Petitioner-Appellee*.

DANA POOLE, Assistant District Attorney (Alan Gadlin, Assistant District Attorney, *on the brief*), *on behalf of* Cyrus R. Vance, Jr., District Attorney, New York County, New York, New York, *for Respondent-Appellant*.

––––––––––

DEBRA ANN LIVINGSTON, *Circuit Judge*:

On November 2, 1981, a young doctor and soon-to-be-father was shot and killed in a petty street robbery gone awry outside of Columbia Presbyterian Hospital in the Washington Heights neighborhood of Manhattan. The ensuing investigation led New York City police to petitioner-appellee Darryl Whitley, who was arrested and tried on one count of felony murder in the second degree. Whitley's first trial resulted in a hung jury. At his second trial, the State presented, *inter alia*, three witnesses who took the stand and testified that Whitley had admitted his involvement in the murder. On this record, a properly instructed state court jury returned a verdict of guilty on the sole count of the indictment. On direct appeal, New York's Appellate Division affirmed the conviction, *People v. Whitley*, 14 A.D.3d 403 (1st Dep't 2005), and the New York Court of Appeals denied leave to appeal, *People v. Whitley*, 4 N.Y.3d 892 (2005).

Whitley then filed the instant action in the Southern District of New York (Alvin K. Hellerstein, *Judge*), seeking a writ of habeas corpus relieving him from the state court judgment of

2

conviction. *See* 28 U.S.C. § 2254.[2] His petition principally challenges the admission, at his second trial, of the transcript of testimony offered by a State witness at his first trial after that witness, Glenn Richardson, invoked his Fifth Amendment right against self-incrimination and refused to participate in the second proceeding. Whitley, who contends that Richardson "recanted" his testimony from the first trial, argues that admission of the transcript at the second trial, without mention of the ostensible "recantation," violated his clearly established federal rights. Despite the fact that New York State's Appellate Division rejected the very same claim on direct appeal on the ground that Whitley had failed properly to raise and preserve it before the trial court, the district court declined to deem the claim procedurally defaulted and instead proceeded to address its merits. The court found that even though no request was ever made by Whitley's trial counsel to admit the alleged "recantation," the trial court's failure to ensure that the jury heard of it at the second trial rendered this trial "unfair," thereby violating his Sixth and Fourteenth Amendment rights.

Because the Appellate Division correctly determined that Whitley failed to lodge a contemporaneous objection before the trial court and thus to preserve the federal claim for appellate review as required by well-established state law, *see* N.Y. Crim. Proc. Law § 470.05(2), we conclude that its decision affirming the conviction rests on a state law ground independent of the federal claim and adequate to support the judgment. Accordingly, federal habeas review of Whitley's claim is foreclosed. We thus reverse the judgment of the district court.

## I.  BACKGROUND

---

[2] As discussed further below, Whitley also commenced a proceeding pursuant to New York Criminal Procedure Law § 440.10 in state court collaterally challenging his conviction. Judge Hellerstein stayed the federal action during the pendency of this collateral challenge, proceeding to address the federal claim only after Whitley had been denied relief in state court.

3

On November 2, 1981, Dr. John Chase Wood was returning to work a night shift at Columbia Presbyterian Hospital after visiting his pregnant wife at home when he was set upon by two young men seeking prescription drugs and blank prescription forms. When Dr. Wood was unable to produce either, the men began to accost him, searching his person for anything of value. The young doctor resisted and, in the ensuing scuffle, one of the assailants produced a .22 caliber handgun and fired two shots, one of which pierced the victim's chest. Dr. Wood died shortly thereafter at the same hospital at which he had worked until that night.

The robbery and murder remained unsolved for over a decade while New York City detectives pursued various leads. The investigation ultimately led police to two men: Patrick Raynard McDowell and petitioner Whitley. Whitley was indicted on felony murder charges in March 1995 and was thereafter tried.[3]

## A. The Trials

### 1. Whitley's First Trial

Whitley's first trial took place in November-December 1997. The government's evidence consisted principally of the testimony of an eyewitness to the crime, Dorothy Howze, and three friends of Whitley's—Gregory Howard, Donald Caines, and Glenn Richardson. Howze testified to having seen two teenagers approach Dr. Wood on the night in question before an argument ensued and shots were fired. Howze, who was able to pick McDowell out of a photo array, further testified that, shortly after the gunfire, one of the "kids" said "something to the effect of . . . it wasn't necessary" to which the other replied "it just happened."

---

[3] McDowell was indicted in 1994. His first trial resulted in a hung jury. McDowell was subsequently retried and acquitted in 1997.

4

The State's other principal witnesses, Howard, Caines, and Richardson—all of whom were longtime friends of Whitley's with criminal records of their own—testified, in sum and substance, that Whitley had admitted his involvement in the crime in separate, private conversations with each of them. Howard, for example, testified to a conversation the two men had shortly after Howard was arrested and questioned "concerning [the] doctor that got killed." According to Howard's testimony, when he subsequently spoke with Whitley about the incident, Whitley stated: "It was me and [McDowell] that did the doctor." Caines similarly testified that, while incarcerated with Whitley in 1983, Whitley confessed to him that Whitley and McDowell "did the doctor."

Richardson, who testified pursuant to a cooperation agreement with federal authorities in connection with pending federal charges against him, testified that he, Whitley, and McDowell grew up together on the same block in Harlem. In the fall of 1981, McDowell asked Richardson for a gun and Richardson loaned him a .22 caliber handgun. According to Richardson, when he attempted to retrieve the gun shortly after he first heard about the murder of Wood, McDowell refused to return it because it was "dirty"—that is, it had been used in a crime. Richardson then attempted to confirm this with Whitley. According to Richardson's testimony, when asked about the gun, Whitley replied: "[D]id [you] hear about the doctor being killed on Riverside Drive[]?" When Richardson acknowledged that he had heard about "the doctor," Whitley "got silent" and then "in pig latin" said "he didn't have to do that." Prompted by the prosecutor, Richardson then added that "I think" Whitley also said that Whitley and McDowell were on Riverside Drive, looking for someone to rob, when the doctor "came along and [McDowell] shot him."

All four witnesses were subject to extensive cross-examination. With respect to Whitley's three acquaintances, defense counsel elicited that each had a lengthy criminal history of his own and

5

that each received various benefits in return for his testimony. With respect to Richardson in particular, defense counsel also inquired into a letter Richardson had previously written to the judge presiding over the pending federal charges against him, alleging that he had been pressured by the New York City detectives investigating the Wood homicide who, according to Richardson, seemed "very eager" to solve this "high profile case with a lot of press." Richardson further conceded on cross that in his initial interview with Detective Gennaro Giorgio, the lead detective on the case, Richardson had attributed to McDowell—and not to Whitley—the specific statement that the two men had gone to Riverside Drive looking to rob someone and had ultimately shot the doctor.[4]

On this record, a jury was unable to reach a verdict, and a mistrial was declared.

### 2. Richardson's "Recantation"

The State began preparing to retry Whitley in the fall of 2001. At that time, Richardson, who had since been released from prison and apparently no longer felt bound by the terms of his cooperation agreement, indicated that he did not intend to honor the State's subpoena for his testimony at the retrial. At a pretrial hearing held on November 26, 2001, New York Supreme Court Justice Budd Goodman explored the nature of Richardson's unwillingness to testify, asking him whether he recalled making his initial statement to Detective Giorgio on May 10, 1994. Richardson, who was represented by counsel, first stated that he remembered making the statement but that he "was not clear and conscious during that statement." Richardson was then placed under oath, at which point he claimed, first, not to remember making the statement, before taking the position that "I made it—I might have made the statement but I don't recall the whole content of the statement."

---

[4] Richardson also testified, however, that he told Detective Giorgio during this initial interview that when Richardson approached Whitley to ask about the gun Richardson had loaned to McDowell, Whitley asked him whether he had heard about the doctor and also said, in pig latin, that "he didn't have to do that."

6

After informing Richardson that the sort of "amnesia" he appeared to be claiming might be considered "contemptuous conduct," the state court adjourned the proceedings to allow Richardson some time to confer with counsel and possibly "jog [his] memory."

The proceedings reconvened in January 2002 before Justice Laura E. Drager, who would also preside over Whitley's retrial. Whitley's counsel, who had not participated in the prior hearing before Justice Goodman, was now present. On January 7-9, 2002, Justice Drager held extended hearings on the issue of Richardson's testimony. During these hearings, Justice Drager heard first from Richardson's attorney, who informed the court that Richardson had abandoned his claim of lack of memory but "would take the Fifth Amendment if called to testify." Specifically, as became clear over the course of the proceedings, Richardson—who, according to his attorney, could no longer say for sure "and never was positive that [Whitley] said to him that he was present and participated in the robbery of the doctor, and was actually present when the doctor was shot by [McDowell]"—feared a prosecution for perjury should his testimony at the second trial depart in any significant measure from his testimony at the first. Justice Drager then called Richardson to the stand and placed him under oath, at which point Richardson, as proffered, invoked his Fifth Amendment right against self-incrimination and refused to make any further statements. Deeming Richardson therefore to be "unavailable" as a witness for the purpose of the second trial, Justice Drager ruled that Richardson's testimony from the first trial—which, as noted, had been subject to vigorous and extensive cross examination—could be read into the record at the retrial.

Whitley's counsel objected to the trial court's ruling, arguing that Whitley should be allowed to explore the "recantation" on cross examination. Defense counsel then made a single, specific request of the trial court: "that the prosecution be ordered to immunize Richardson" so that he could

7

testify at the second proceeding without any risk of a subsequent state perjury prosecution. The trial court, noting that "there is overwhelming reason to doubt the genuineness of Mr. Richardson's recantation here," denied that request, finding that under prevailing state law, it had no authority to compel the State to immunize Richardson.

Defense counsel made no additional or alternative applications during these hearings or in multiple, additional court appearances over the two weeks between Justice Drager's ruling and the actual introduction of Richardson's prior testimony. In particular, counsel never asked the trial court to inform the jury about Richardson's alleged "recantation" and voiced no objection to the trial court's proposed instruction with respect to the Richardson testimony—i.e., that the jurors were "not to speculate" about "the reasons why this witness is not here testifying before you, but . . . are only to know that the court has determined that it is appropriate for you to hear this evidence in this way and that this is the manner in which this evidence is being received." Indeed, when Justice Drager previewed this instruction with the parties and asked whether it "address[ed] every concern," Whitley's attorney responded, "I believe so."

### 3.    *Whitley's Second Trial*

Whitley's second trial took place in January-February 2002. At that trial, the State again called Howze, Howard, and Caines, each of whom offered testimony substantively identical to that offered at Whitley's first trial.

However, the second trial differed from the first in several respects. First, the State presented two additional witnesses, Bernard Barnes and Ricky Darlington, who were able to connect Whitley to the murder. Barnes testified that he, too, had heard Whitley confess to his involvement in the crime. Specifically, Barnes related that, upon visiting Whitley in jail shortly after the 1981 murder,

8

Whitley told him, "Yeah, 'B,' we did kill the doctor." According to Barnes' testimony, Whitley further told Barnes that he, McDowell, and a man named Richard had robbed Wood and that McDowell shot him when Wood "put up a struggle."[5] Whitley told Barnes that he did not get any money from the robbery, and that he "felt bad" about the incident. Darlington testified that he was present during the conversation between Howard and Whitley during which, according to Howard, Whitley admitted, "[i]t was me and [McDowell] that did the doctor." Darlington did not participate in the conversation and could not testify as to its specific content, but he was able to corroborate Howard's testimony that Whitley and Howard conferred on that occasion about the doctor who had been killed.

Second, the State offered the testimony of Detective Giorgio. Giorgio, who had been the lead detective on the case, testified that he interviewed Whitley about the murder on March 23, 1995. During that interview, Giorgio informed Whitley that, during the course of the investigation, Whitley had "continually" been mentioned as a participant, along with McDowell, in the Wood robbery and homicide. According to Giorgio's testimony, Whitley then responded by stating: "You don't have [a] case against [McDowell]. The only way you're going to get [McDowell] is through me."

Third, the parties presented a stipulation that Whitley, McDowell, and a third individual had committed a different robbery together on December 10, 1981—i.e., less than six weeks after Wood's shooting—in midtown Manhattan. The stipulation, which was admitted to establish Whitley's connection to McDowell and was accompanied by an appropriate limiting instruction,

---

[5] Howze also recalled seeing a third person who was "looking at the scene" but was "not real, real close."

9

further informed the jury that Whitley had pled guilty to this crime in 1982.[6]

Finally, as noted, Richardson did not testify at the retrial. Instead, a transcript of his testimony from the first trial, including defense counsel's thorough cross examination, was read into the record.

The retrial spanned nearly two weeks, and the jury then spent an additional two days deliberating. During that time, it conscientiously pored over the record, as indicated by its fifteen requests to review evidence or to have portions of trial testimony, including Richardson's, read back. On February 6, 2002, the jury returned a unanimous verdict of guilty on the sole count of the indictment. On April 18, 2002 Whitley was sentenced to a prison term of 22 years to life.

## B.      Appellate History

Whitley then filed an appeal with the New York State Appellate Division. Before that court, Whitley argued for the first time that evidence of Richardson's so-called "recantation" should have been presented to the jury at the second trial along with the transcript of Richardson's testimony from the first proceeding. The Appellate Division declined to review this claim, finding that it was not preserved because Whitley had failed to request that evidence of Richardson's alleged recantation be admitted at trial, as required by New York's contemporaneous objection rule. *See People v. Whitley*, 14 A.D. 3d 403, 405 (1st Dep't 2005). The Appellate Division further noted that even if it were to review the unpreserved claim, it would find the recantation inadmissible pursuant to *Mattox v. United States*, 156 U.S. 237, 244-50 (1895).[7] *Id.* Finally, the Appellate Division

---

[6] Whitley pled guilty to first-degree robbery. The jury was not informed that, in fact, Sylvia Killen, the victim of this robbery, was also shot and killed by McDowell, who pled guilty to first-degree manslaughter as a result.

[7] As discussed further below, in *Mattox*, the Supreme Court held that "before a witness can be impeached by proof that he has made statements contradicting or differing from the

10

determined that even if the alleged recantation were admissible "there is no reasonable possibility that its introduction would have affected the verdict." *Id.* The New York Court of Appeals declined to review the case. *People v. Whitley*, 4 N.Y.3d 892 (2005).

Whitley subsequently brought a motion to vacate the judgment of conviction in New York State Supreme Court pursuant to New York Criminal Procedure Law 440.10, collaterally challenging his conviction on the ground that he had been denied the effective assistance of counsel. Specifically, Whitley argued that his trial counsel should have sought to have evidence of the "recantation" introduced and that his failure to do so or to otherwise preserve the claim rendered the assistance provided "ineffective." The New York State Supreme Court denied that motion and the Appellate Division affirmed that denial. In so doing, both courts cited the Appellate Division's conclusion, on direct appeal, that had it reached the merits of the unpreserved claim, it would have deemed evidence of Richardson's "recantation" inadmissible because no foundation had been laid for its admission. As the Appellate Division thus reasoned in denying the section 440.10 motion, "[h]ad trial counsel attempted to get the statements before the jury, he would undoubtedly have been rebuffed, and we cannot fault him for not trying." *Whitley*, 61 A.D.3d at 423 (quoting *People v. Stultz*, 2 N.Y.3d 277, 287 (2004)). The Appellate Division further determined that "regardless of whether defendant's counsel should have sought to introduce the recantation evidence, or whether it should have been admitted, its absence did not deprive defendant of a fair trial or cause him any

_____

testimony given by him upon the stand, a foundation must be laid by interrogating the witness himself as to whether he has ever made such statements." *Mattox v. United States*, 156 U.S. 237, 245 (1895). While the so-called *Mattox* rule is no longer applicable in federal court in circumstances such as these, *see* Fed. R. Evid. 806, it is still applied in New York. *See People v. Whitley*, 61 A.D.3d 423, 423 (1st Dep't 2009) (explaining, in context of denying Whitley's section 440.10 motion, that "*Mattox* remains part of this State's evidentiary law" and, in this case "defendant was unable to lay a foundation for the admission of the recantations by asking the witness about them").

11

prejudice." *Id.* at 424. Specifically, in support of that conclusion, the Appellate Division noted that the evidence established that Whitley had admitted his guilt to four different persons on separate occasions, that these accounts generally harmonized with each other and with the other evidence, and that there was no evidence of collusion. *Id.* It thus concluded that there was no reasonable possibility that introducing evidence regarding Richardson's alleged recantation would have affected the verdict.

## C. This Action

Before his section 440.10 motion was resolved, Whitley filed a petition for a writ of habeas corpus in federal court, contending principally that the state court's failure to admit evidence of Richardon's recantation at the second trial violated his clearly established federal rights. The district court stayed the proceedings pending resolution of the section 440.10 motion in New York state court, whereupon it proceeded to evaluate the merits of Whitley's federal petition and, by opinion and order dated July 22, 2010, granted the writ.

The district court concluded that, by admitting the transcript of Richardson's testimony from the first trial without mention of the "recantation," the state court created "a basic unfairness in the mix of evidence before the jury," depriving Whitley of due process and "compromis[ing] the Confrontation Clause of the Sixth Amendment." *Whitley v. Ercole*, 725 F. Supp. 2d. 398, 418 (S.D.N.Y. 2010). It rejected the State's contention that the Appellate Division's decision rested on an adequate and independent state law ground—namely, Whitley's non-compliance with the state's contemporaneous objection rule—and thus that federal review of the claim was foreclosed. The court concluded that Whitley had "substantially complied" with the rule and, further, that perfect compliance with the rule would not have led to a different result before the trial court. *Id.* at 425-27.

12

Finally, it rejected the State's contention that any error below was harmless, finding that Richardson's testimony was the State's "most important evidence" in what it deemed a "weak" case. *Id.* at 424-25. This appeal ensued.

## II.  DISCUSSION

### A. Standard of Review

In reviewing a district court's ruling on a petition for habeas corpus, we examine factual findings for clear error and consider questions of law *de novo*. *Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006). While the district court began its analysis by discussing the merits of Whitley's federal constitutional claims, where, as here, the State contends that the challenged decision "'rests on a state law ground that is *independent* of the federal question and *adequate* to support the judgment,'" *Lee v. Kemna*, 534 U.S. 362, 375 (2002) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)), our practice is to evaluate the sufficiency of that state law ground in the first instance. We do so because when "faced with an independent and adequate state ground" for the decision, "principles of comity and federalism" compel us to "defer" to that state law ground and thus to decline to review the federal claim. *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999); *see also Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) ("Federal courts generally will not consider a federal issue in a case if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." (internal quotation marks omitted)). This is true irrespective of whether the state law ground is substantive or procedural. *Garvey*, 485 F.3d at 713.

### B. Adequate and Independent State Law Ground for Decision

The State contends that the challenged state court decision—the Appellate Division's

13

decision rejecting Richardson's claim of error and affirming the conviction—rests on just such an adequate and independent state law ground. Specifically, it directs our attention to that court's determination that the very claim Whitley advances here was procedurally barred under state law because Whitley failed to comply with the State's well-established and codified contemporaneous objection rule. Accordingly, it argues that the district court should have credited that state law ground for decision and thus declined to engage in substantive review of the federal claim. We agree.

New York's contemporaneous objection rule provides that a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling "at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same." N.Y. Crim. Proc. Law § 470.05(2). This rule has been interpreted by New York courts to require, "at the very least, that any matter which a party wishes" to preserve for appellate review be "brought to the attention of the trial court at a time and in a way that gave [it] the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon*, 85 N.Y.2d 71, 78 (1995); *see also People v. Hicks*, 6 N.Y.3d 737, 739 (2005). A "general objection is not sufficient," because, as "New York's highest courts uniformly instruct," to preserve a claim, a defendant must "specifically focus on the alleged error." *Garvey*, 485 F.3d at 714 (collecting state court authority).

Applying that rule, the Appellate Division found that Whitley had failed to preserve any claim of error in the trial court's failure to admit evidence of Richardson's "recantation" because defense counsel never sought to have such evidence admitted at trial. Whitley does not challenge that finding before this Court—indeed, our law makes clear that we have no authority to question

14

the state's interpretation of its own procedural law under these circumstances. *See Cotto v. Herbert*, 331 F.3d 217, 247 (2d Cir. 2003) ("Our task is not to determine whether [the state court] ruling was correct, but to determine its adequacy to preclude federal habeas review."). Accordingly, it is with little difficulty that we conclude that the Appellate Division's express reliance on the state's contemporaneous objection rule in rejecting Whitley's appeal constitutes an "independent" state law ground for that decision. *See Garcia*, 188 F.3d at 77; *cf. Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996) ("[P]rocedural default in the state court will . . . bar federal habeas review when the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." (internal quotation marks omitted)).[8]

The only question for us to resolve, thus, is whether that independent state law ground is "adequate," on these facts, to preclude further review of the federal claim. Adequacy in this context presents a question of federal law and requires evaluation of "the state interest in a procedural rule against the circumstances of a particular case." *Lee*, 534 U.S. at 386-87. As a general rule, a state ground for decision will be deemed adequate to preclude habeas review of a federal claim if it stems from violation of a "rule that is firmly established and regularly followed by the state in question." *Garcia*, 188 F.3d at 77 (internal quotation marks omitted). Our case law has long made clear that New York's contemporaneous objection rule is just such a "firmly established and regularly followed" rule, *see id.* at 77-79; *Taylor v. Harris*, 640 F.2d 1, 1-2 (2d Cir. 1981), *see also Ohio v. Osborne*, 495 U.S. 103, 123 (1999) ("The state [contemporaneous objection rule] . . . serves the

---

[8] This remains true even when the state court addresses the merits in reaching an alternative holding. *See Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) ("There is no question that the Appellate Division's explicit invocation of the procedural bar constitutes an 'independent' state ground, even though the court spoke to the merits of Garcia's claim in an alternative holding.") (internal citation omitted).

State's important interest in ensuring that counsel do their part in preventing trial courts from" committing error at trial), and Whitley does not argue to the contrary.

Instead, Whitley seeks to rely on the narrow exception announced by the Supreme Court in *Lee v. Kemna*, 534 U.S. 362 (2002), for those "exceptional cases" in which application of an otherwise sound state rule is so "exorbitant" as to render it "inadequate to stop consideration of a federal question." *Id.* at 376. In *Lee*, trial counsel, faced with the sudden, unexplained disappearance of three critical alibi witnesses, made an oral motion for a brief continuance—a motion the trial judge rejected on the ground that personal commitments and his trial calendar prevented him from delaying Lee's case. On appeal, the state court affirmed, invoking, for the first time, a state rule requiring that any such motions be made in writing. Lee then sought federal habeas review which the Eighth Circuit denied, deeming Lee's non-compliance with the relevant state rule an adequate and independent state law ground for decision. The Supreme Court reversed. *Id.* at 365-67. Noting that under the "extraordinary circumstances" of that case "nothing would have been gained by requiring" defense counsel to submit a written motion in the midst of trial rather than making the motion orally, the Court deemed the case before it to present the "rare circumstances" in which "unyielding application of the [state] rule would disserve any perceivable interest." *Id.* at 376, 378-80, 385. Accordingly, the Court held that, on those facts, Lee's violation of the state rule was insufficient to foreclose habeas review of his federal claim.

In reaching that conclusion, the *Lee* Court identified three "considerations" that, "in combination," weighed in favor of finding that the otherwise adequate state ground for decision would not block adjudication of the federal claim under the circumstances. *Id.* at 381. First, it concluded that perfect compliance with the state procedural rule would not have led to a different

16

outcome because, as noted, the trial court made clear that it was unable to accommodate a continuance or delay. *Id.* Second, it observed that "no published [state court] decision direct[ed] flawless compliance" with the relevant state rule "in the unique circumstances this case presents." *Id.* at 382. Third, and "most important," the Court determined that defense counsel had "substantially complied" with the state rule "given the realities of trial." *Id.* (internal quotation marks omitted). On these "unique" facts and in these "extraordinary circumstances," the Court concluded that Lee's claim fell "within the small category" of "exceptional cases" in which an otherwise sound state rule was inadequate to bar federal review of a constitutional claim. *Id.* at 376, 381-82.

Whitley contends, and the district court found, that these same three considerations weigh in favor of finding that this case similarly falls within that "limited category" of "exceptional cases." We disagree. As a preliminary matter, we emphasize our previous determination that the three considerations highlighted by the *Lee* Court—which our case law has, on occasion, somewhat inaccurately referred to as "factors," *see, e.g.*, *Monroe v. Kuhlman*, 433 F.3d 236, 242 (2d Cir. 2006) (quoting *Cotto*, 331 F.3d at 240)—are by no means a "test" but instead are simply "guideposts" for "evaluating the state interest in a procedural rule against the circumstances of a particular case," *Cotto*, 331 F.3d at 240 (internal quotation marks omitted).[9] That evaluation, in turn, informs the truly critical inquiry—namely, whether we can deem the application of a state rule so "exorbitant"

---

[9] We note in passing that none of our sister circuits, except the Eighth, appears to have spoken of *Lee* as setting forth "factors," *see Owsley v. Luebbers*, 281 F.3d 687, 692 (8th Cir. 2002), and even that court has more recently eschewed that term in favor of a more discrete inquiry into whether the case presented mirrors the "unique circumstances" that made application of the Missouri rule in *Lee* "exorbitant," *Barnett v. Roper*, 541 F.3d 804, 810-11 (8th Cir. 2008) (noting that *Lee* turned on the "unique circumstances" of that case and concluding that "[b]ecause no similar unforeseeable circumstances . . . were present in [this] case, we cannot say that the [state rule] . . . was 'exorbitant'").

as to render it inadequate to preclude habeas review of the federal claim.

We begin, thus, with that question, and, after *de novo* review of the record, we find no basis for deeming application of New York's contemporaneous objection rule to Whitley's claim to be "exorbitant." To the contrary, its invocation here is well within the parameters of its routine and generally unquestionable application to bar review of unpreserved objections to trial testimony, *see, e.g., People v. Mack*, 787 N.Y.S.2d 397, 398 (2d Dep't 2005) ("Although the defendant objected to that testimony . . . , he did not specify the ground now raised on appeal and failed to object to the [trial] court's remedy. Therefore, the issue is unpreserved for appellate review."), unpreserved claims regarding admission of particular evidence, *see., e.g*,, *People v. McClain*, 672 N.Y.S.2d 503, 504 (3d Dep't 1998), or unpreserved Sixth Amendment Confrontation Clause claims, *see, e.g.*, *Mack*, 787 N.Y.S.2d at 398; *People v. Fleming*, 519 N.E.2d 616, 616 (N.Y. 1988). Moreover, its application here is entirely consistent with and in furtherance of two of the rule's principal objectives: to ensure that "parties draw the trial court's attention to any potential error while there is still an opportunity to address it," *Cotto*, 331 F.3d at 245, and to prevent those who fail to do so from "sandbagging" the opposing party and the trial court on appeal, *Garcia*, 188 F.3d at 82 (citing *Wainwright v. Sykes*, 433 U.S. 72, 89 (1977)); *see also Garvey*, 485 F.3d at 720 ("[D]emanding compliance with [§ 470.05(2)] serves a legitimate governmental interest in this case, that is to say, the interest in allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error."); *Garcia*, 188 F.3d at 81 ("[I]t runs contrary to the legitimate purpose of section 470.05 to characterize as 'preserved' an issue on which the trial judge never had the opportunity to rule."). Thus, its application here cannot be deemed "unyielding" or in "disser[vice to] any perceivable interest." *Lee*, 584 U.S. at 380.

18

Moreover, we see nothing "exceptional," "extraordinary," or "unique," *id.* at 376, 382, about the facts of this case that would alter this analysis. This was not a case like *Lee* that involved "rapidly unfolding events that [Whitley] and his counsel could not have foreseen." *Id.* at 378. To the contrary, the issue of Richardson's testimony was amply discussed by all parties over the course of a three-day hearing several weeks before trial and was subsequently raised anew by the trial court in the context of its proposed instruction that the jury was to draw no inference from Richardson's absence. Accordingly, it is not at all unusual in these circumstances—let alone "exorbitant"—to insist that defense counsel comply with the rule and apprise the trial court of a request to have evidence admitted before permitting a claim of error in *not* admitting the evidence to be raised on appeal. *Cf. Lee*, 534 U.S. at 383 (insistence on compliance with the state rule under those circumstances would be "so bizarre as to inject an Alice-in-Wonderland quality into the proceedings" (internal quotation marks omitted)). As noted, no such request was ever made.

Evaluation of the three special "considerations" present in *Lee* does not alter our view of this case. The first—whether "perfect compliance" with the state procedural rule "would have changed the trial court's decision," *Lee*, 534 U.S. at 387—necessarily "involves a certain degree of speculation" where, as here, a state contemporaneous objection rule is at issue, *Cotto*, 331 F.3d at 243. Indeed, as we have previously explained, given the absence of a contemporaneous objection, it is impossible to conclusively determine, as the Court did in *Lee*, that perfect compliance with the procedural rule would have had no effect on the outcome below. *See, e.g.*, *id.* at 242. Accordingly, we have deemed this first consideration "not very relevant in cases" such as this one "where we are reviewing application of the 'contemporaneous objection' rule." *Monroe*, 433 F.3d at 242.

In arguing otherwise, Whitley seeks to rely on the Appellate Division's observation, in

19

rejecting his ineffective assistance of counsel claim, that "'[h]ad trial counsel attempted to get the statements before the jury, he would undoubtedly have been rebuffed.'" *Whitley*, 61 A.D.3d at 423 (quoting *Stultz*, 2 N.Y.3d at 287). But this determination by the Appellate Division—which was based on the applicability of the so-called *Mattox* rule in New York courts—is simply not equivalent to the Supreme Court's conclusion in *Lee* that "[n]othing would have been gained" by requiring "formally perfect compliance" with the written motion requirement because "the trial court . . . had in clear view the information needed to rule intelligently on the merits of the motion." *Lee*, 534 U.S. at 366, 385, 387 (internal quotation marks).

The *Mattox* rule, long abandoned in federal court but still a part of New York state practice, requires that a proper foundation be laid before a witness's prior, allegedly contradictory statements be admitted to impeach his testimony. *See Mattox*, 156 U.S. at 244-50. In concluding that no such foundation existed in this case, the Appellate Division was necessarily limited to the record on appeal, and thus could not consider the foundational or factual findings a trial court might have made with respect to the statements had the issue been properly presented to it. *See Wainwright*, 433 U.S. at 88 ("A contemporaneous objection enables the record to be made" at the time rather than "years later in a federal habeas proceeding" and "enables the [trial] judge . . . to make the factual determinations necessary for properly deciding the federal constitutional question.").

Indeed, had Whitley properly raised the issue before the trial judge, that court could have evaluated the claim in the first instance and perhaps crafted a remedy that satisfied both Whitley *and* the *Mattox* rule. Alternatively, the prosecutor might have agreed to admission of the ostensible recantation in some form so as to eliminate even the potential for a constitutional claim. *See id.* at 89 (noting that a contemporaneous objection may cause the prosecution "to take a hard look" at whether to persist in a position at the risk of creating a potential constitutional issue on appeal). At

20

a bare minimum, the trial court could have developed a factual record supporting its decision that could then properly be reviewed on appeal. In other words, this is simply not a case in which "'[n]othing would have been gained by requiring'" Whitley's counsel to comply with the contemporaneous objection rule. *Lee,* 534 U.S. at 385 (quoting *Osborne*, 495 U.S. at 124). Accordingly, even were we to overlook our general presumption that the "perfect compliance" consideration "is not very relevant" in cases such as this one, we would nonetheless be unable to conclude that it weighs in Whitley's favor.

The second consideration identified by the *Lee* Court was the absence of any state case law "indicat[ing] that compliance with the rule was demanded in the specific circumstances presented." *Cotto*, 331 F.3d at 240 (citing *Lee*, 534 U.S. at 381-85). The district court found, and Whitley urges on appeal, that "New York courts have not previously confronted [the] issue" of whether state law directs "flawless compliance with the preservation rule in the unique circumstances of this case," and accordingly that this point "weighs in Whitley's favor." *Whitley*, 725 F. Supp. 2d at 427 (internal quotation marks omitted). We disagree.

As a preliminary matter, the district court erred in framing its inquiry. While we do not doubt that no New York court has previously addressed the "unique facts" of this case—rarely, if ever, will there be a case whose specific and "unique facts" have previously been presented to a higher court—that is not the inquiry that the second *Lee* consideration demands. Instead, *Lee* directs us to inquire as to how state courts apply the relevant rule to a party in petitioner's "predicament," *Lee*, 534 U.S. at 382, and to evaluate whether the legal "claim raised by the petitioner" is or "'is not regularly the subject of a procedural default in New York,'" *Cotto*, 331 F.3d at 243 (quoting *Arce v. Smith*, 889 F.2d 1271, 1273 (2d Cir. 1989)). Here, as discussed above, we have little difficulty concluding that New York law *does* direct "flawless compliance" with the contemporaneous

21

objection rule for parties in Whitley's "predicament"—that is, parties seeking to admit impeachment evidence—and, accordingly, that this is the sort of claim "regularly . . . subject [to] a procedural default in New York." *Arce*, 889 F.2d at 1273. Moreover, we see nothing particularly unique about Whitley's case that might lead us to question the applicability of this body of New York law. *Cf. Garvey*, 485 F.3d at 719 ("[N]o sudden or unanticipated event . . . led [petitioner] not to comply with § 470.05(2)" and accordingly "the second [*Lee*] consideration . . . does not indicate that application of § 470.05(2) was exorbitant."); *see also United States v. Grasso*, 413 F. Supp. 166, 171 (D. Conn. 1976) ("Recantation of a witness' testimony at trial is not a rare occurrence.") (collecting authorities). Accordingly, we are unable to agree with the district court that this consideration weighs in favor of Whitley.

Finally, the third consideration identified in *Lee* turns on whether Whitley's counsel "substantially complied" with the state rule "given the realities of trial." *Lee*, 534 U.S. at 382 (internal quotation marks omitted). We have little difficulty concluding that this "most important" consideration, *id.*, weighs strongly against Whitley. New York's contemporaneous objection rule, as interpreted by state courts, provides that "'a question of law will be considered preserved for appellate review [only] when it is interjected at the fact-finding level in such a manner and at such a time as to fairly apprise the court and the opposing party of the nature and scope of the matter contested.'" *Garcia*, 188 F.3d at 78 (quoting *People v. Jones*, 440 N.Y.S.2d 248, 261 (2d Dep't 1981)). General or related objections are insufficient because the rule demands that the issue be identified by trial counsel "with sufficient specificity" so as "to enable the trial court to respond." *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (citing state authority). As we have explained, the "basis" of the rule "is that the trial court must be given a fair opportunity to rule on an issue of law before it can be raised on appeal." *Garvey*, 485 F.3d at 720.

22

Here, Whitley's counsel did not substantially comply with that rule. He did not comply with it *at all*. Whatever the precise scope of the relief being requested now—and we note that, even before this Court, Whitley's counsel remained unable to articulate precisely what evidence the trial court erred in failing to admit—there can be no dispute that Whitley's trial counsel made no application for that relief below. Indeed, as noted, over the course of an extended, three-day hearing, Whitley's counsel made one, *and only one*, application to the trial court once Richardson's testimony was ruled admissible. This application was for an order directing the State to immunize Richardson, which the trial court denied. Whitley's counsel made no other requests and, specifically, made no request to admit Richardson's ostensible "recantation" in any form or to bring that issue before the jury in any other respect. To the contrary, as noted above, not only did Whitley's counsel fail to make such a request, but he failed to object when the trial court informed the parties of its intent to instruct the jury to draw no inferences from Richardson's absence. Whitley therefore, without question, did not give the trial court an opportunity to address the claim of error raised on appeal, and thus cannot be said to have complied in any respect with the state rule.

These facts are thus readily distinguishable from *Lee*, where the relevant rule's "essential requirements . . . were substantially met." *Lee*, 534 U.S. at 385. In *Lee*, as discussed above, petitioner's sole failure was technical—Lee's request was made orally rather than in writing, but the relevant information and claim were otherwise fully presented to the trial court. Here, by contrast, the request was not made *at all*, and accordingly, far from simply failing to meet "the formal requirements of § 470.05(2)," Whitley "violated the very substance of the rule." *Garvey*, 485 F.3d at 720; *see also id.* (noting that the "very essence" of the rule is the state's "interest in allowing the trial court to have the first opportunity to rule on and possibly rectify any alleged legal error").

In arguing otherwise, Whitley contends that his more general objections were sufficient to

23

meet the rule's requirements.  We cannot agree.  Our reading of New York law, and indeed our own prior application of that law, simply does not support such a conclusion.  *See, e.g.*, *Garcia*, 188 F.3d at 81 ("While . . . *an issue* may have been raised at [the] time . . . *the legal issue* [petitioner] attempted to raise on appeal was not brought to the trial court's attention in a way or in such a manner as to give the trial judge an opportunity to remedy the problem and avert reversible error." (emphasis added, internal quotation marks omitted)); *see also Garvey*, 485 F.3d at 715-16 (objection at trial to admission of identification on one ground insufficient to preserve objection to the same identification on a different ground because "[u]nder the firmly established and regularly followed New York interpretation of § 470.05(2), this issue cannot be raised for the first time on appeal"); *People v. Sanchez*, 890 N.Y.S.2d 10, 11 (1st Dep't 2009) (general, pretrial objections to expert testimony "were insufficiently specific to . . . preserve the particular claims defendant raises on appeal").

We therefore remain satisfied that this is not the sort of "exceptional" case *Lee* spoke of and that there is simply no basis for deeming application of the state's otherwise well-established and generally valid contemporaneous objection rule to be "exorbitant" on these facts.  Accordingly, we are bound to deem that independent state law ground adequate to support the judgment of the Appellate Division affirming Whitley's conviction and therefore sufficient to foreclose federal habeas review of the unpreserved claim.  *Cf. Garcia*, 188 F.3d at 76 (enforcing procedural bar "ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases"(quoting *Coleman*, 501 U.S. at 732)); *see also Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000) ("The doctrine of procedural default is based on considerations of comity and finality.").

* * *

24

Because we conclude that an adequate and independent state law ground for decision forecloses our review of Whitley's federal claim, we need not and do not reach the merits of that claim. We pause briefly, however, to express our disagreement with aspects of the district court's discussion of that claim—specifically, the district court's characterization of the State's case here as "weak" and its determination that "Richardson's testimony was the State's most important evidence implicating Whitley." *Whitley*, 725 F. Supp. 2d at 424-25. *De novo* review of the record does not support these findings.

First, the case against Whitley was not insubstantial. Setting Richardson's testimony aside, the State's evidence included three additional witnesses, each of whom took the stand to testify, in sum and substance, that Whitley had admitted to participating, along with McDowell, in the robbery and murder. The State also offered the testimony of Detective Giorgio, who told the jury about Whitley's statements under questioning, and specifically Whitley's statement—from which a jury could certainly infer guilt—that Giorgio "[did]n't have [a] case against [McDowell]" and that "[t]he only way you're going to get [McDowell] is through me." Finally, the jury heard that Whitley and McDowell had committed a similar robbery only weeks after the robbery of Wood, evidence admitted with a limiting instruction that it could be considered only as proof of the confederates' close relationship. That the state "relied heavily" on the testimony of witnesses with criminal histories and did not offer "physical evidence tying Whitley to the crime" does not alter our conclusion that this was a substantial case. Government cases are frequently built on the testimony of those with criminal histories, and the absence of physical evidence is hardly atypical.

Second, we see no basis for deeming Richardson's testimony to be the State's "most important evidence implicating Whitley." *Id.* at 425. To the contrary, of the four friends of Whitley's who provided evidence at trial, Richardson's testimony was arguably the most equivocal

with respect to Whitley.  That testimony, which was peppered with qualifiers such as "I think" and "from the best of my recollection," established primarily that Whitley had implicated *McDowell* in the shooting.  Indeed, Richardson's most concrete testimony was that, when discussing the murder, Whitley "got silent" and then said in "pig latin" that McDowell "didn't have to do that."  By contrast, Barnes, Caines, and Howard each testified that Whitley directly and explicitly confessed to his own involvement in the crime.

Richardson was also subject to the most searching cross examination—a cross examination that uncovered prior, inconsistent statements to police regarding his conversations with Whitley about the crime as well as his prior allegations that he had been pressured by detectives into providing incriminating testimony against Whitley.  That searching cross-examination was, of course, also read back to the jury at the second trial along with his direct testimony.

Moreover, there is no evidence that the *parties* viewed Richardson's testimony as any more important than any of the other testimony, let alone the *most* important evidence at trial.  To the contrary, in closing, the State highlighted the testimony of all of its witnesses, arguing to the jury that there were "four people who heard admissions from this defendant," and adding further that "if you believe one of the four, this defendant is guilty."  Defense counsel similarly responded to all the trial evidence and did not particularly highlight Richardson's testimony as any more damaging or important than any of the other incriminating evidence.

Accordingly, we are simply unable to agree either that this was a "weak" case or that the testimony at issue constituted the State's "most important" evidence.

## III.   CONCLUSION

For the reasons set forth above, we conclude that Whitley's claim was not properly raised before the trial court in accordance with New York's contemporaneous objection rule and,

26

accordingly, is procedurally barred. We thus reverse the judgment of the district court and remand the case for further proceedings not inconsistent with this opinion.